KYLE CHENOWETH
Attorney
Montana Department of Corrections
5 South Last Chance Gulch
P.O. Box 201301
Helena, MT 59620-1301
Phone - (406) 247-5130
Fax - (406) 444-4920
KChenoweth@mt.gov

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| REGINALD COREY GRAY,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN GOOTKIN, JIM SALMONSEN, CHRIS LAMB, TERRIE STEFALO,<br><br>Defendants. | Cause No. CV 24-40-H-DWM<br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS........................................................................ i

TABLE OF AUTHORITIES .............................................................. ii

INTRODUCTION .............................................................................1

STANDARD OF REVIEW .................................................................1

FACTUAL BACKGROUND................................................................2

ARGUMENT .....................................................................................3

   I.    RLUIPA ...................................................................................3

      a.  The State Has Not Placed a Substantial Burden on Gray's Religious
         Exercise .......................................................................................4

      b.  The State Has a Compelling Interest in Controlling When and Where
         Inmates Display Religious Clothing .............................................5

      c.  The State's Religious Head Covering Policy is the Least Restrictive Means
         for Furthering its Compelling Interest ........................................7

   II.   First Amendment Free Exercise .................................................10

CONCLUSION..................................................................................20

CERTIFICATE OF COMPLIANCE....................................................21

CERTIFICATE OF SERVICE ...........................................................22

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662.................................................................1

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ...........................1

*Ben-Binyamin v. Ramirez*, 2022 U.S. Dist. LEXIS 132646 (E.D. Cal.)........... 17, 18

*Block v. Rutherford*, 468 U.S. 576 (1984) ........................................ 11, 17

*Bloodstone v. Gootkin*, 2024 U.S. Dist. LEXIS 108643 (D. Mont. June 20, 2024).2, 12, 13, 14

*Brown v. Lake*, 2015 U.S. Dist. LEXIS 165685 (D. Ariz. Dec. 10, 2015)....... 5, 8, 9

*Charles v. Frank*, 101 Fed.Appx. 634 (7th Cir. 2004) ............................................6

*Cousins v. Lockyer*, 568 F. 3d 1063 (9th Cir. 2009)...................................................1

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)........................................... 5, 7, 8

*Entler v. Knox*, 2013 U.S. Dist. LEXIS 138838 (W.D. Wash.) ..............................19

*Freeman v. Arpaio*, 125 F.3d 732 (9th Cir. 1997)....................................................10

*Graham v. C.I.R.*, 822 F.2d 844 (9th Cir.1987).......................................................10

*Greene v. Solano County Jail*, 513 F.3d 982 (9th Cir. 2008)...................................10

*Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996) ...................................................8

*Holt v. Hobbs*, 135 S. Ct. 853 (2015) .......................................... 3, 4, 7, 8

*Horacek v. Wilson*, 2009 U.S. Dist. LEXIS 27605, (E.D. Mich. 2009)...................6

*Hudson v. Palmer*, 468 U.S. 517 (1984).................................................................5

*Jonas v. Schriro*, 2006 U.S. Dist. LEXIS 69427 (D. Ariz., September 25, 2006) ....6

*Jones v. Williams*, 791 F.3d 1023 (9th Cir. 2015) ..................................................18

*Junaid v. Kempker*, 2009 U.S. Dist. LEXIS 25940 (E.D. Mo., March 27, 2009).....6

*McElyea v. Babbitt*, 833 F.2d 196 (9th Cir. 1987)...................................................19

*Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058 (9th Cir. 2008) .......................18

*Navaro v. Block*, 250 F.3d 729 (9th Cir. 2001) ........................................................1

*O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) .............................. 10, 16, 17, 19

*Ohno v. Yasuma*, 723 F.3d 984 (9th Cir. 2013) .....................................................18

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008) ....................................4

*Price v. Johnston*, 334 U.S. 266 (1948) ...................................................................10

*Rogers v. Scurr*, 676 F.2d 1211 (8th Cir. 1992) .......................................................6

*Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) ...................................................10

*Turner v. Safley*, 482 U.S. 78 (1987) ........................................................... passim

*Ward v. Walsh*, 1 F.3d 873 (9th Cir. 1993)..................................................... 15, 16

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ................................... 4, 5, 7

*Washington v. Harper*, 494 U.S. 210 (1990) .............................................................5

*Whipple v. Mann Mortgage, LLC*, 2014 U.S. Dist. LEXIS 50756 ...........................1

*Young v. Lane*, 922 F.2d 370 (7th Cir. 1991) .................................................. 6, 7, 14

**Statutes**

28 U.S.C. § 1915 ....................................................................................................1, 2

42 U.S.C. § 2000cc-1 .............................................................................................1, 3

42 U.S.C. § 2000cc-5 ................................................................................................4

**Internal Procedures**

MSP Procedure 5.6.1 ............................................................................... 2, 3, 9, 12

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................1, 2

Local Rule 7.1 .........................................................................................................21

**Constitutional Provisions**

U.S. Const. amend. I. ...............................................................................................10

## INTRODUCTION

Brian Gootkin, Jim Salmonsen, Chris Lamb, and Terrie Stefalo ("Defendants"), file this Brief in Support of their Rule 12(b)(6) Motion to Dismiss Plaintiff Reginald Corey Gray's ("Gray") Complaint.

The Court has screened Gray's Complaint pursuant to 28 U.S.C. § 1915, and Gray's claims under both the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc-1(a)(1)-(2)) and the First Amendment's Free Exercise Clause remain.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "tests the legal sufficiency of a claim." *Whipple v. Mann Mortgage, LLC*, 2014 U.S. Dist. LEXIS 50756, *7 (D. Mont. 2014), *citing Navaro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is proper if there exists "a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Whipple*, *7, *citing Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating a motion to dismiss, all allegations of material fact are assumed to be true and are construed in the light most favorable to the non-moving party. *Cousins v. Lockyer*, 568 F. 3d 1063, 1067 (9th Cir. 2009). This principle does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678.

Because Gray is a prisoner proceeding *in forma pauperis*, his Complaint required a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and §§ 1915A(a)-(b). This Court's previous *sua sponte* screening procedure is cumulative of, and not a substitute for, any subsequent Rule 12(b)(6) motion that a defendant may later bring. *Bloodstone v. Gootkin*, 2024 U.S. Dist. LEXIS 108643, *1 (D. Mont. June 20, 2024).

## FACTUAL BACKGROUND

Montana State Prison ("MSP") procedure provides that all inmates choosing to wear religious clothing items outside of cells must cover such items from public view. Specifically, MSP Procedure 5.6.1(III)(D)(6) states:

> [I]f an inmate chooses to wear his religious medallion (crucifixes, medicine bag, etc.), he must wear it around his neck using the necklace item that came with the medallion and keep it tucked under his shirt. He may wear it on the outside of the shirt/coat only when in cell or attending a religious service or activity.
> . . .
>
> [I]nmates who choose to wear their religious skull caps outside of their cell or communal services will wear the skull cap discreetly and fully covered underneath an approved cap. Staff may require an inmate to remove, and may search, the religious skull cap at any time for security reasons.

MSP allows all inmates to wear religious personal property outside their cells. This includes religious medallions—such as crucifixes, medicine bags and rosaries—and religious head coverings, like yarmulkes and kufis. The only

limitation is inmates must conceal the religious property under clothing or an approved cap.

Gray is an inmate currently incarcerated at MSP. He is a practicing Muslim who chooses to wear a kufi (brimless, short, rounded cap) for religious purposes. Soon after his arrival at MSP, Gray was informed that, pursuant to MSP Procedure 5.6.1, he is only allowed to wear his exposed kufi while he is inside his cell or attending religious services and events. Otherwise, all out-of-cell movement requires Gray to cover his kufi completely with an approved, prison-issued cap.

Gray seeks injunctive and declaratory relief relating to his inability to freely wear his exposed kufi throughout the prison.

## **ARGUMENT**

### I.   **RLUIPA**

Under RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a "compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). A plaintiff who brings a RLUIPA claim has the burden to establish (1) a policy implicates a sincerely held religious belief and (2) the policy substantially burdens his religious exercise. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). If the plaintiff satisfies these elements, the burden shifts to the defendant to show the policy is "(1) in furtherance of a

compelling governmental interest; and (2) the least restrictive means of furthering that compelling governmental interest." *Id.* at 863.

RLUIPA requires the government to meet a higher burden of proof than the First Amendment's rational basis standard, found in *Turner*. *Pierce v. County of Orange*, 526 F.3d 1190, 1209 n.19 (9th Cir. 2008).

### a. The State Has Not Placed a Substantial Burden on Gray's Religious Exercise

In any RLUIPA claim, courts begin by identifying the religious exercise allegedly impinged upon and asking whether the prison regulation at issue "substantially burdens" that religious exercise. RLUIPA defines religious exercise broadly as to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). A substantial burden is a burden that imposes a "significantly great restriction or onus" upon a prisoner's exercise of religion. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005). This requires an inmate to demonstrate he is forced to engage in conduct that seriously violates his religious beliefs. *Holt*, 135 S. Ct. at 862.

Here, Gray makes no claim as to how or why MSP's religious head covering policy substantially burdens his religious exercise beyond simply alleging that wearing a kufi is his religious right and he does so to practice and adhere to his religious belief. Further, MSP's head covering policy does not bar Gray from wearing his kufi—it only bars him from wearing it uncovered outside of his cell or

outside of religious services. This requirement is not a great restriction or onus upon Gray's religious exercise. As a result, Gray's RLUIPA claim should be dismissed.

### b. The State Has a Compelling Interest in Controlling When and Where Inmates Display Religious Clothing

If this Court finds Gray has established that MSP's religious head covering policy creates a substantial burden on his religious exercise, MSP has a compelling governmental interest in barring inmates from wearing religious head coverings and medallions outside of their clothing in public areas. When considering a RLUIPA claim, "prison security is a compelling state interest, and [] deference is due to institutional officials' expertise in this area." *Cutter v. Wilkinson*, 544 U.S. 709, 725, n.13 (2005). "There are few cases in which the State's interest in combating the danger posed by a person to both himself and others is greater than in a prison environment, which, 'by definition,' is made up of persons with 'a demonstrated proclivity for antisocial criminal, and often violent, conduct.'" *Washington v. Harper*, 494 U.S. 210, 225 (1990) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)). This includes preventing animosity between inmates who do not welcome the religion they believe is conveyed by religious property. *Brown v. Lake*, 2015 U.S. Dist. LEXIS 165685, at *16 (D. Ariz. Dec. 10, 2015). The Ninth Circuit concurs that prison security "clearly is" a compelling governmental interest. *Warsoldier*, 418 F.3d at 998.

For well over three decades, courts have recognized that religious property, and head coverings specifically, can be abused to create threats to prison security and safety. Prison "gangs try to identify their members by means of such visual aids as hats." *Young v. Lane*, 922 F.2d 370, 376 (7th Cir. 1991); *e.g. Horacek v. Wilson*, 2009 U.S. Dist. LEXIS 27605, at *15-16 (E.D. Mich. 2009) (Policy prohibiting any wearing of yarmulke outside of cell upheld against RLUIPA challenge because of safety and security concerns); *see also Junaid v. Kempker*, 2009 U.S. Dist. LEXIS 25940 at *8 (E.D. Mo., March 27, 2009) (policy restricting religious head coverings to religious activities and outdoors, does not violate the RLUIPA (citing *Rogers v. Scurr*, 676 F.2d 1211, 1216 (8th Cir. 1992))); *Jonas v. Schriro*, 2006 U.S. Dist. LEXIS 69427 at *5 (D. Ariz., September 25, 2006) (Compelling interest in security and discouraging gang affiliation justified policy prohibiting headbands outside of recreational area, and religious services); *Young*, 922 F.2d at 375-76 (in First Amendment claim, the Government has a "strong interest in uniform dress regulations," "modern-day courts recognize that gangs pose a 'serious challenge'" to institutional security, and gangs "try to identify their members by means of such visual aids as hats"); *Charles v. Frank*, 101 Fed.Appx. 634, 636 (7th Cir. 2004), cert. denied, 543 U.S. 980, 125 S. Ct. 479, 160 L. Ed. 2d 358 (2004) (Regulation prohibiting visible prayer beads outside of prisoners' cells did not violate RLUIPA).

MSP has a compelling interest in maintaining the safety and security of its facility by minimizing the use of non-uniform clothing—which can and has been used as gang affiliation identification—and by minimizing animosity between inmates who have conflicting religious beliefs. *See Young*, 922 F.2d at 375-76.

As a result, even if this Court finds that MSP's religious head covering policy imposes a substantial burden on Gray's religious exercise, MSP's compelling interest in preventing threats to the safe, secure, and orderly functioning of its facility justifies its policy. This interest is supported by the multiple examples cited above. For these reasons Gray's RLUIPA claim should be dismissed.

### c. The State's Religious Head Covering Policy is the Least Restrictive Means for Furthering its Compelling Interest

Finally, on the question of the least restrictive means, "courts should not blind themselves to the fact that the analysis is conducted in the prison setting." *Holt*, 135 S. Ct. at 866. RLUIPA recognizes "the urgency of discipline, order, safety, and security in penal institutions." *Cutter*, 544 U.S. at 723. The government must have "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice[.]" *Warsoldier*, 418 F.3d at 999. Also, RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety." *Cutter*, 544 U.S. at 722. Congress

intended "courts would apply [RLUIPA]'s standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Id.* at 723; *Holt*, 135 S. Ct. at 867 (Sotomayor, J., concurring) (deference due "when prison officials offer a plausible explanation for their chosen policy that is supported by whatever evidence is reasonably available to them."). Also, RLUIPA does not require prison officials to engage in a "herculean burden" to refute every conceivable option to satisfy the least restrictive means requirement, as such a burden would conflict with the due deference afforded to administrators. *Hamilton v. Schriro*, 74 F.3d 1545, 1556 (8th Cir. 1996) (discussing identical standard under RFRA).

The circumstances in this matter are like those in *Brown v. Lake*, a case that upheld an Arizona prison's prohibition on public display of religious medallions. The *Brown* court concluded that allowing inmates to wear religious property under clothing was the least restrictive means:

> Forbidding all religious medallions would further the government's interest in safety and security, but such a rule might not be the least restrictive means of furthering that interest. Accordingly, the BOP has fashioned a rule that permits inmates to possess religious medallions but requires them to wear their medallions inside the shirt except during services. It is the least restrictive means of furthering the prison's interest in security, safety, and good order.

*Brown*, 2015 U.S. Dist. LEXIS 165685, *16-17 (D. Ariz.). Although *Brown*

concerned medallions, as opposed to head coverings, the ultimate issue is the

same: accommodating religious property while ensuring safety and security for

MSP's inmates and staff. The Department's policy allowing religious property to

be worn at all times, concealed, is the least restrictive alternative.

Also, Gray has not presented any other alleged less restrictive means.

Instead, he effectively asks the Court to scrap MSP Procedure 5.6.1 III(D)(6) and

allow religious property to be worn, uncovered, outside of cells. This is not a less-

restrictive alternative and is, instead, a request to strike the policy entirely.

RLUIPA does not require zero restrictions—it requires the least-restrictive means.

When the only alleged less-restrictive alternative is abandonment of the policy

altogether, Gray essentially asserts his religious accommodation should trump

safety and security and concedes there is no less-restrictive alternative.

This Court should dismiss Gray's RLUIPA claim because (1) MSP's

religious head covering procedure does not substantially burden Gray's religious

exercise, (2) MSP and the Department have a compelling interest in controlling

where inmates display their religious property, and (3) the head covering policy

represents the least restrictive means for protecting that compelling interest.

## II.     First Amendment Free Exercise

The government is held to a lower standard under the First Amendment than under RLUIPA. *Greene v. Solano County Jail*, 513 F.3d 982, 986, 989 (9th Cir. 2008). The First Amendment to the United States Constitution provides that "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . . " U.S. Const. amend. I. Inmates "retain protections afforded by the First Amendment," including the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (*quoting Price v. Johnston*, 334 U.S. 266, 285 (1948)).

To implicate the Free Exercise Clause, a belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial. . . .'" *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (*quoting Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987)) *overruled on other grounds by Shakur*, 514 F.3d at 884–85.

"When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."

*Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Turner*, the Supreme Court held that while constitutional freedoms—specifically those falling under the First Amendment—must be protected, they are not absolute and are subject to reasonable restrictions serving legitimate penological interests. *Id.* at 81.

*Turner* establishes four factors to be balanced in determining whether a prison regulation is reasonably related to legitimate penological interests: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it;" (2) whether there are "alternative means of exercising the right that remain open to prison inmates;" (3) whether "accommodation of the asserted constitutional right" will "impact . . . guards and other inmates, and on the allocation of prison resources generally;" and (4) whether there is an "absence of ready alternatives" versus the "existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-90 (*quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

In the instant case, the Department restricted Gray wearing a kufi outside his prison-issued clothing. This restriction is applicable only when inmates are outside of their assigned cell and when not attending religious services. The restriction does not prevent Gray from displaying the kufi inside his cell. The restriction is in place due to a legitimate penological interest—safety—and is no more restrictive than it needs to be. Much like the mail restrictions in *Turner,* the DOC religious

head covering restriction is very narrowly tailored and in the least restrictive means while furthering a legitimate governmental interest—maintaining institutional safety and security. As discussed above, the DOC policy allows for alternatives such as inmates wearing religious items outside of their uniform when attending religious ceremonies or while inside their cells.

Very recently, this Court reviewed a motion to dismiss in *Bloodstone* where an inmate brought claims against the Department which are very similar to those in Gray's Complaint. *Bloodstone,* 2024 U.S. Dist. LEXIS 108643 (D. Mont. June 20, 2024). In *Bloodstone*, a transgender inmate at MSP was approached by staff as she was exiting the prison cafeteria and told to tuck her religious medallion under her shirt, pursuant to MSP Procedure 5.6.1(III)(D)(6). *Id.* at *2. In response, the inmate filed suit under the First Amendment, claiming the prison had violated her right to free exercise. *Id.* at *4. The Court found that all four *Turner* factors weighed in the Department's favor and ultimately dismissed the inmate's Complaint. *Id.* at *8-14. It also found that the inmate's Complaint could not be saved by any amendment, so the matter was dismissed with prejudice. *Id.* at *14.

In *Bloodstone*, the Court found that the first—and "most important"— *Turner* factor weighed in the Department's favor because MSP had "a valid, rational connection between the policy and a legitimate governmental interest, that is, maintaining security and order within the facility." *Id.* at *8-9. Further, because

the Department's RLUIPA analysis, above, establishes that MSP has a compelling interest to support its head covering policy, it would certainly also have the legitimate governmental interest needed to defeat a First Amendment case under the first *Turner* factor. As a result, the first *Turner* factor weighs heavily in the Department's favor.

Regarding the second *Turner* factor, the *Bloodstone* court found in favor of the Department, stating "the accommodations of wearing her [medallion] outside her clothing while in her cell or during a religious ceremony, but not in public spaces, did not prevent her from entirely exercising her religion." *Id.* at *11. Here, all inmates are always allowed to wear any religious headwear they choose. The only caveat is that the headwear must be covered in public areas. If the right Gray is seeking to defend is the right to cover his head with a religious kufi, he can do that. Further, if Gray only seeks the ability to cover his head at all times, he has the option to wear a kufi under a prison-issued hat, or he can simply wear the prison-issued hat. Ultimately, Gray can wear his kufi anywhere and anytime he chooses. As a result, he is not prevented from entirely exercising his religion. For these reasons, this Court should find that the second *Turner* factor always weighs in the Department's favor.

Next, the *Bloodstone* court determined that the third *Turner* factor weighed "slightly in Defendants' favor," by recognizing that "[i]f all religions were allowed

to openly wear their religious adornments at all times it could lead to violence or intimidation against certain groups." *Id.* at *12. This factor, which directs courts to examine whether accommodation of the asserted constitutional right will impact guards and other inmates, should be found to weigh in the Department's favor again here. Allowing inmates to wear any non-uniform headgear can be, and has been, used for gathering and communicating gang-related activity. This is exactly why courts have found that prisons have a strong interest in their uniform dress regulations. *Young*, 922 F.2d at 375-76. As a result, the threat of allowing inmates to freely wear religious items outside their cell poses a major threat to all individuals within the prison walls—inmates and staff.

Finally, the *Bloodstone* court found the fourth and final *Turner* factor weighed in the Department's favor due to the absence of ready alternatives. Specifically, the Court found that, "[a]side from allowing all groups to openly wear religious adornments at all times, it is unclear how the policy could be readily altered. . . . the policy concerns identified by [the Department] are aimed at preventing individual inmates from being identified and singled out by others due to their beliefs." *Id.* at *12. Also, because MSP's religious head covering policy is the least restrictive means of furthering the State's compelling state interest— under the RLUIPA analysis above—this court should again find in favor of the Department in terms of the fourth *Turner* factor. There are no ready alternatives

that would be both less restrictive and that would protect MSP's legitimate interest in protecting its safety and security.

Courts across the country have developed a line of caselaw that supports dismissal of all First Amendment Free Exercise claims wherein an inmate was expected to keep religious items covered in public areas of the prison. For example, in *Ward*, the Ninth Circuit Court of Appeals addressed a variety of religious accommodation complaints brought to light in a lawsuit by a Jewish inmate incarcerated in a remote Nevada prison. *Ward v. Walsh*, 1 F.3d 873 (9th Cir. 1993). The Ninth Circuit, relying on the *Turner* analysis, upheld the lower court's ruling that the Respondent-prison was not obligated to accommodate the inmate's request that he not ever be transported on the Sabbath and that he be permitted to have candles in his cell for prayer rituals (among some other issues), holding:

> Ward argues that he must be allowed to have candles in his cell to observe certain rituals of his religion. The warden asserts that candles pose a significant fire hazard, and thus under no circumstances are prisoners allowed to have them in their cells. The *Turner* factors clearly weigh in favor of the prison officials on this claim. The serious safety and security concerns raised by allowing inmates to possess and use candles outweigh the curtailment of Ward's religious practice. Thus, we conclude that the regulation is reasonably related to a legitimate penological purpose and thus is valid under *Turner.*

*Id.* at 879.

> Second, Ward does not contend that the prison intends to transfer him on *every* Sabbath. Because he can observe most Sabbaths, we conclude

that he has alternative means of exercising his religion as contemplated
by *O'Lone*.

*Id.* at 880.

In the instant case, much like in *Ward,* the prison must weigh the

penological interest in safety, security, and functional capability and do its best to

provide alternative means of observance. The State's religious head covering

policy minimizes the burden on Gray's ability to practice his religion while still

considering the penological interest in safety and security by attempting to prevent

potential conflict among groups with certain affiliations wearing head coverings or

adornments for identification or non-religious ideological purposes, or for

intimidation, which could lead to violence against an individual.

*O'Lone* is another case where the Courts were tasked with the difficult duty

of weighing the First Amendment right of inmates to freely practice religion versus

the interest a prison has in maintaining institutional safety and security. *O'Lone v.*

*Estate of Shabazz*, 482 U.S. 342 (1987).

In *O'Lone,* inmates who were working outside the main prison facility were

not allowed to return to the facility during the day and as such, on certain Fridays,

some minimum-security Muslim inmates were unable to attend Jumu'ah, a weekly

Muslim congregation service. *Id* at 345-347. This restriction was implemented due

to security concerns with inmates traveling in and out of the prison buildings

multiple times during the day and the security risks such activity created. *Id.*

This set of facts presented a difficult dilemma for the lower Courts and led

to a narrow majority opinion in the Supreme Court. Importantly, the Court held:

> We take this opportunity to reaffirm our refusal, even where claims are
> made under the First Amendment, to "substitute our judgment on . . .
> difficult and sensitive matters of institutional administration," *Block* v.
> *Rutherford*, 468 U.S. 576, 588 (1984), for the determinations of those
> charged with the formidable task of running a prison.

*Id.* at 353.

*O'Lone* is a useful reference point precisely because of the difficulty in the

analysis. The case at hand is arguably a much easier analysis than *O'Lone,* but the

principle remains the same: even in the sensitive realm of First Amendment rights

analysis, a certain amount of deference needs to be given to the administrators who

run the prisons. Safety and security of inmates and staff are paramount and, as with

the inmates in *O'Lone,* Gray is not precluded from all forms of religious

expression and observance, merely a rationally-based restriction designed to

improve and secure the prison.

Next, in *Ben-Binyamin*, the United States District Court for the Eastern

District of California addressed the issue of religious adornments in the context of

a Tzitzit—an undergarment bearing fringes worn by some members of the Jewish

faith. *Ben-Binyamin v. Ramirez*, 2022 U.S. Dist. LEXIS 132646 (E.D. Cal.).

*Ben-Binyamin* is instructive in that it sets forth the basis to succeed on free

exercise claims under the First Amendment.

To succeed on a First Amendment religious practice claim, a claimant "must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). The Ninth Circuit has held that a "'substantial burden' is imposed only when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit . . . or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions . . . ." *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1070 (9th Cir. 2008). A substantial burden is "more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013). The subjective diminishment of spiritual fulfillment, standing alone, does not give rise to a substantial burden. *Navajo Nation*, 535 F.3d at 1070.

*Id.* at *3-4.

The *Ben-Binyamin* Court ultimately granted summary judgment to the defendants, holding that requiring the inmate to tuck in the garment when entering the cafeteria was reasonably related to a legitimate penological interest. *Id.* at *10. It stands to reason that MSP's regulation on having Gray cover his kufi while outside of his cell is also reasonably related to a legitimate penological interest. There is nothing in the DOC policy that creates a "substantial burden" on Gray. The DOC policy is, at worst, a minor inconvenience to Gray. Furthermore, Gray has failed to make any argument that wearing the kufi outside of his clothing is a necessary or critical tenet of religious expression or somehow violative of Gray's religious beliefs. To paraphrase the *Ben-Binyamin* Court: MSP's religious head

covering policy's subjective diminishment of Gray's spiritual fulfillment, standing alone, does not give rise to a substantial burden on his religious exercise.

Finally, in *Entler v. Knox,* the United States District Court for the Western District of Washington addressed the issue of First Amendment protections as it related to religious adornments. *Entler v. Knox*, 2013 U.S. Dist. LEXIS 138838 (W.D. Wash.). The Court in *Entler* granted the defendant's Motion for Summary Judgment, upholding the State of Washington DOC's regulation that required religious medallions be worn under the inmate's clothing except when the inmate was inside his cell or at a religious service. *Id.* at *17. The Court held that the DOC policy requiring the inmate to wear the crucifix under his clothing did not violate the First Amendment. *Id.* at *7. The right to freely exercise one's religion "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *Id.*, *citing McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (citing *O'Lone*, 482 U.S. at 348).

This holding is in line with the other well-established case law cited previously. In the instant case, as in *Entler*, Gray fails to demonstrate that the restriction put in place by the DOC was in place to prohibit the free exercise of religion and not to achieve legitimate correctional or security objectives.

## **CONCLUSION**

For these reasons, Gray's RLUIPA claim should be dismissed because (1) MSP's religious head coverings policy does not substantially burden Gray's religious exercise, (2) the policy is in furtherance of a compelling governmental interest, and (3) the policy represents the least restrictive means for furthering Defendants' compelling governmental interest.

Gray's First Amendment Free Exercise claim should likewise be dismissed because (1) there is a valid, rational connection between the Department's legitimate governmental interest in controlling religious head coverings and the policy at issue here, (2) Gray has alternative means of exercising his religion, (3) invalidating the religious head coverings policy would negatively affect MSP's inmates and staff, and (4) there are no ready alternatives.

DATED this 27th day of September, 2024.

> */s/ Kyle Chenoweth*
> Kyle Chenoweth
> Attorney for Defendants

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double-spaced except for footnotes and quoted and indented material; and the word count calculated by Microsoft Word for Windows is 4697 words, excluding the caption, certificates of compliance and service, and if required, tables of contents and authorities, and exhibit index.

*/s/ Kyle Chenoweth*
KYLE CHENOWETH

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 27th day of September, 2024, a copy of the foregoing

document was served on the following persons by the following means:

| | |
|---|---|
| _____1_____ | CM/ECF |
| _____ | Hand Delivery |
| _____2_____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. Clerk, U.S. District Court

2. Reginald Corey Gray
   AO# 3036056
   Montana State Prison
   700 Conley Lake Road
   Deer Lodge, MT 59722

*/s/ Kyle Chenoweth*_____
Kyle Chenoweth
Attorney for Defendants