IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| REGINALD COREY GRAY, | Cause No. CV 24-40-H-DWM |
| Plaintiff, | |
| vs. | ORDER |
| BRIAN GOOTKIN, JIM SALMONSEN, CHRIS LAM, and TERRIE STEFALO, | |
| Defendants. | |

On May 24, 2024, Plaintiff Reginald Corey Gray filed a Complaint alleging a violation of his religious freedom under 42 U.S.C. § 1983. (Doc. 2.) Defendants have moved to dismiss. (Doc. 8.) Plaintiff has responded. (Docs. 10 and 10-1.) The motion is denied, in part, and granted, in part.

## I.    FACTUAL BACKGROUND

Plaintiff Reginald Gray has been incarcerated at Montana State Prison since December 20, 2023. Gray is a Muslim and wears a skull cap called a kufi. On January 9, 2024, Gray was informed that, if he wears his kufi outside of his cell or religious services, it must be covered by another authorized cap, such as a stocking cap or baseball hat. (Doc. 2 at 3.) Gray has grieved this policy and sought a religious accommodation to allow him to wear his kufi uncovered anywhere and at any time in the prison. (Doc. 2 at 4.)  He was advised that the policy would not

1

change, that he must cover his kufi. As a result, he filed this lawsuit alleging

violations of the First Amendment and the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc–1, et seq.

## II.   ANALYSIS

### A. Motion to Dismiss Standard

In considering a motion to dismiss for failure to state a claim, the court must

accept the allegations of the complaint as true, *Hospital Bldg. Co. v. Rex Hospital

Trustees,* 425 U.S. 738, 740, (1976), construe the pleading in the light most

favorable to the plaintiff, and resolve all doubts in the pleader's favor. *Jenkins v.

McKeithen,* 395 U.S. 411, 421, *reh'g denied,* 396 U.S. 869 (1969). A plaintiff's

complaint must allege sufficient facts to state a claim for relief that is plausible on

its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the court must

accept as true the plaintiff's well-pled facts, conclusory allegations of law and

unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to

dismiss. *Vazquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007);

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A]

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do. Factual allegations must be enough to

raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007) (citations and footnotes omitted).

B. RLUIPA

"RLUIPA provides that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the government can demonstrate that the burden 'is in furtherance of a compelling governmental interest' and 'the least restrictive means of furthering that compelling governmental interest.'" *Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022) (quoting 42 U.S.C. § 2000cc-1(a)).

The plaintiff bears the initial burden of demonstrating that an institution's policy constitutes 1.) a substantial burden on 2.) his exercise of religion. 42 U.S.C. § 2000cc-2(b). If he does so, the burden shifts to the government to establish that any burden reflects a compelling governmental interest and is the least restrictive means of achieving that interest. "Although RLUIPA adopts a compelling interest standard, context matters in the application of the standard, and courts should act with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Jones v. Slade*, 23 F.4th 1124, 1141 (9th Cir. 2022) (citation omitted.)

To survive a motion to dismiss on his RLUIPA claim, Gray must allege facts plausibly showing that the challenged policy and the practices it engenders impose

a substantial burden on his exercise of his religious beliefs. *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir. 2013).

In the context of a prisoner's constitutional challenge to institutional policies, the Ninth Circuit has held that a substantial burden occurs "where the state ... denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124–25 (9th Cir. 2013) (citing *Warsoldier v. Woodford,* 418 F.3d 989, 995 (9th Cir. 2005) (alteration in original) (quotation omitted).)

Defendants contend that they have not substantially burdened Gray's religious exercise, because Gray is still able to wear his kufi at all times, though covered. (Doc. 9 at 8.) Defendants assert that "[t]his requirement is not a great restriction or onus upon Gray's religious exercise." (Doc. 9 at 9.) Gray summarily responds that he is obliged by his religion to wear his kufi "at all times uncovered, as he believes is required." (Doc. 10-1 at 5.) If that assertion is true, then a policy that requires him to cover it would substantially burden his religious exercise.

The question for the Court is whether Gray has "plausibly" alleged that his religious exercise is substantially burdened by having to wear a covering over his kufi. In his response brief, Gray asserts that "it has been the religious practice of himself, and the Islamic community to adhere to the Sunnah of the Prophet and

wear a kufi at all times," and "that wearing of the kufi at all times was consistent with Islamic religious practices." (Doc. 10-1 at 2.) Later, in his discussion of the substantial burden, Gray refers to his "religious belief that he must wear a kufi at all time[s]." (Doc. 10-1 at 4.) He repeats the assertion that his belief is "that he must wear his kufi at all times, he expressly states that his faith requires him to wear his kufi all day." (Doc. 10-1 at 4.) Thus, Gray repeatedly defines his religious exercise only as wearing his kufi "all day."

However, when the discussion shifts to the substantial burden, Gray begins to claim that the religious exercise is not just to wear a kufi, but to wear it uncovered all day. (Doc. 10-1 at 5.) But then he reverts to an assertion that he "exercise[s] his beliefs by wearing a kufi at all times throughout the facility," without stating his belief is that it must be uncovered. *Id.* Gray has not convincingly asserted that his religious exercise has been substantially burdened, given the short shrift the importance of wearing the kufi uncovered—as opposed to just wearing it all of the time--is given in both his Complaint and his response to Defendants' motion. But the line between implausible and convincing is not one that can be parsed without facts at this early phase in the litigation. Gray has asserted that his religion requires him to wear his kufi uncovered, (Doc. 10-1 at 8), and that if he does so, he will be disciplined. (Doc. 2 at 5.) The Court concludes, for the purpose of this motion only, that Gray has sufficiently alleged that

Defendants' actions substantially burden his religious exercise. To conclude
otherwise, or to assess the degree to which any burden might be justified, wades
too far into the facts to be appropriate for a motion to dismiss. Thus, the motion as
to Gray's RLUIPA claim is denied.

(Defendants contend that even if they were to concede that Gray's religious
exercise is substantially burdened, they have met the tests of showing they have a
compelling governmental interest, and their policy is the least restrictive means of
achieving it. (Doc. 9 at 9 – 12.) They do have a compelling governmental interest,
as discussed below. But whether their policy is the least restrictive means of
achieving it is a fact-intensive inquiry beyond the scope of this motion to dismiss.)

C.     First Amendment

Defendants have also moved to dismiss Gray's First Amendment free
exercise claim, under the U.S. Supreme Court's analysis in *Turner v. Safley*, 482
U.S. 78, 89-90 (1987). (Doc. 9 at 14 - 23.) Gray did not respond to this portion of
Defendants' motion.

"The First Amendment, applicable to state action by incorporation through
the Fourteenth Amendment, prohibits government from making a law prohibiting
the free exercise [of religion]. The Supreme Court has repeatedly held that
prisoners retain the protections of the First Amendment. A prisoner's right to freely
exercise her religion, however, is limited by institutional objectives and by the loss

of freedom concomitant with incarceration." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (alteration in original) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (*quoting O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'" *Id.* (*quoting O'Lone*, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), supplemented, 65 F.3d 148 (9th Cir. 1995); *see also Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in *Malik* determines

7

whether the Free Exercise Clause applies).

Once the initial showing is made, a prisoner must then establish that prison officials substantially burdened the religious practice by preventing him from engaging in conduct which the prisoner sincerely believes is consistent with his faith. *Shakur*, 514 F.3d at 884-85. A regulation that burdens the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987). This determination requires analysis of four prongs: (1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to prisoners; (3) the impact accommodation of the right will have on guards and other prisoners, and on the allocation of prison resources; and (4) the absence of ready alternatives. *Id.* at 90.

The first *Turner* factor is the most important. *Jones v. Slade*, 23 F. 4th 1124, 1135 (9th Cir. 2022). To evaluate whether a valid, rational connection exists, the Court must determine "'whether the governmental objective underlying the policy is (1) legitimate, (2) neutral, and (3) whether the policy is rationally related to that objective." *Id.* (*quoting Mauro v. Arpaio*, 188 F. 3d 1054, 1058 (9th Cir. 1999) (en banc)). The challenged policy "cannot be sustained where the logical connection between the regulation and the asserted goal is so removed as to render the policy

arbitrary or irrational." *Turner*, 482 U.S. at 89.

The Court "must apply a deferential standard of review to challenges regarding prison regulations." *Mauro*, 188 F. 3d at 1058. "Prison officials need merely put forward a legitimate government interest and provide some evidence that the interest put forward is the actual reason for the regulation. *Casey v. Lewis*, 4 F. 3d 1516m 1520-21 (9th Cir. 1993) (internal citations omitted).

Defendants have a valid, rational connection between the policy and a legitimate governmental interest, that is, maintaining security and order within the facility. As explained by Defendants, prison officials have legitimate interests in maintaining safety and security in their facility by minimizing non-uniform clothing to reduce animosity between inmates. (Doc. 9 at 10 – 11.)

The relevant inquiry under the second *Turner* factor is "not whether the inmate has an alternative means of engaging in the particular religious practice that he or she claims is being affected," but rather, "whether the inmates have been denied of all means of religious expression." *Ward v. Walsh*, 1 F. 3d 873, 877 (9th Cir. 1993). Thus, curtailing "various ways of expressing belief, for which alternative ways of expressing belief may be found," does not implicate the First Amendment. *Id*. In the instant case, Gray may, as he asserts he must, wear his kufi at all times. Sometimes, but only outside his cell or religious services, it must be covered. Thus, Gray's ability to practice his religion has been curtailed but not

denied, and to a certain extent, he has some control over how many hours per day his kufi is uncovered by his choice of activities and locations.

The third factor asks what kind of effect a religious accommodation will have on prison guards and other inmates. If all religions were allowed to openly wear their religious adornments at all times it could lead to violence or intimidation against certain groups. While there is limited support in the record for this contention, looking back to the overriding safety and security concerns, this potential for increased risk with accommodation weighs slightly in Defendants favor.

Similarly, the final *Turner* factor also cuts in Defendants' favor. Aside from allowing all groups to openly wear religious adornments at all times, it is unclear how the policy could be readily altered. While Gray desires to wear his kufi uncovered at all times, the policy concerns identified by Defendants are aimed at preventing individual inmates from being identified and singled out by others due to their beliefs. Gray is only prohibited from displaying his kufi in certain situations in order to reduce visibility for purposes of institutional security. As noted by the Defendants, the Supreme Court has reaffirmed the premise that even when claims are made under the First Amendment, courts should refrain from "substituting our judgment on …difficult and sensitive matters of institutional administrations, for the determinations of those charged with the formidable task

10

of running a prison." *O'Lone*, 482 U.S. at 353 (internal citations omitted).

## III.   CONCLUSION

The First Amendment and RLUIPA require different analyses. While Gray has successfully argued that factual determinations preclude an ultimate decision regarding his RLUIPA claim, the Defendants have sufficiently argued, unrebutted, that he does not state a First Amendment claim.

Accordingly, it is HEREBY ORDERED:

1.   Defendants' motion to dismiss (Doc. 8) as to Plaintiff's RLUIPA claim is DENIED.  Defendants' Answer to Plaintiff's Complaint is due within 21 days of the making of this Order.

2.   Defendants' motion as to Gray's First Amendment claim is GRANTED.

3.   Gray must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this ___18___ day of November, 2024.

Donald W. Molloy, District Judge
United States District Court