Blake R. Koemans, Bar No. 14203
Deputy Chief Legal Counsel
Department of Corrections
5 S. Last Chance Gulch
Helena, MT 59601
Phone: (406) 444-3803
Blake.Koemans@mt.gov

*Attorney for Defendants*

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
MONTANA
HELENA DIVISION

| | |
|---|---|
| REGINALD COREY GRAY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BRIAN GOOTKIN, JIM SALMONSEN, CHRIS LAMB, AND TERRIE STEFALO<br><br>　　　　　　Defendants. | Cause No. CV 24-40-H-DWM<br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Defendants Brian Gootkin ("Gootkin"), Jim Salmonsen ("Salmonsen"), Chris Lamb ("Lamb") and Terrie Stefalo ("Stefalo"), collectively ("State Defendants"), move for summary judgment as a matter of law on Plaintiff Reginald Gray's ("Gray") Civil Rights Complaint (Doc. 2) under Fed. R. Civ. P. 56. The challenged procedure does not substantially burden Gray's religious

exercise and is the least restrictive means by which the State can achieve its compelling interest in institutional, staff, and inmate safety. There are no genuine issues of material fact and State Defendants are entitled to judgment as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

The appellant, Reginald Corey Gray, is an inmate currently residing at the Montana State Prison ("MSP") in Deer Lodge, Montana. (SUF ¶ 1). Gray is a Muslim man who claims that he follows the teachings and dictates of the Sunnah. (SUF ¶ 1). As part of his religious exercise, Gray wears a traditional Muslim head-covering called a Kufi. (SUF ¶ 2). Gray alleges that his faith requires that he be allowed to wear his Kufi at all times, anywhere within MSP and that he be allowed to wear his kufi uncovered. (SUF ¶ 9).

The Montana Department of Corrections ("DOC") maintains policies and procedures that regulate religious exercise inside of DOC facilities including MSP. Religious exercise within MSP is primarily governed by Procedure No. 5.6.1, *Religious Programming*. (SUF ¶ 3). Recognizing that many inmates utilize items of personal property as a part of their religious worship, DOC allows inmates to have such items and maintains procedures for their use. (SUF ¶ 6). Procedure No. 5.6.1(III)(D)(6) applies specifically to religious headgear and provides:

> Inmates may only use their religious personal property in accordance with the religious purpose for which they were designed. This includes, but is not limited to:
>
> . . .
>
> b. inmates who choose to wear religious skull caps outside their cell or communal services will wear the skull cap discreetly and fully covered underneath an approved cap. Staff may require an inmate to remove, and may search, the religious skull cap at any time for security reasons; and
>
> c. violations of the above stipulations may result in confiscation of the item(s) as contraband in accordance with MSP Procedure 3.4.1, Institutional Discipline.

(SUF ¶ 7).

The modern version of Procedure No. 5.6.1(III)(D)(6) was adopted in 2011. (SUF ¶ 23). Prior to 2011, the use of religious personal property items was governed by Procedure No. 5.6.1(III)(I)(4), which did not include explicit restrictions on inmates' ability to wear religious personal property uncovered outside of their cell or the Religious Activity Center ("RAC"). (SUF ¶ 17). In 2011, MSP chose to amend the Procedure because inmates were abusing the protections granted to religious personal property. (SUF ¶¶ 21, 22). Inmates were known to display items of religious personal property as a means of identifying themselves and others as gang members. (SUF ¶ 21).

To combat gang identification, MSP adopted Procedure 5.6.1(III)(D)(6) which permitted inmates to wear items of religious personal property outside of

their cell but required they cover such items unless they were participating in a communal religious service in the RAC. (SUF ¶¶ 21-23). The 2011 version of the procedure did not include the provision that applied specifically to religious headgear. However, in 2014 Procedure 5.6.1(III)(D)(6) was again amended to add the provision that Gray challenges here. (SUF ¶ 24).

Shortly after arriving at MSP, Gray was notified that he was not allowed to wear his Kufi uncovered outside of his cell. (SUF ¶ 25). Through a series of grievances, Gray requested that he be allowed to wear his Kufi at all times uncovered anywhere within MSP. (SUF ¶ 27). The Religious Issues Committee, a committee within MSP that meets monthly to review inmate requests, discussed Gray's request, determined that it did not comply with Procedure No. 5.6.1(III)(D)(6)(b), and denied it. (SUF ¶¶ 28, 28).

Following the denial of his request, Gray sought injunctive relief in this court.

## LEGAL STANDARD

The Court must grant summary judgment on any claim or defense, or any part thereof, where the moving party demonstrates that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating that no genuine dispute of any material fact exists. *Devereaux v. Abbey*, 263 F.3d

1070, 1076 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party carries its initial burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted).

## ARGUMENT

Procedure No. 5.6.1(III)(D)(6)(b) does not significantly burden Gray's ability to exercise his religious beliefs by wearing his Kufi uncovered. Gray is permitted to wear his Kufi at all times anywhere within MSP. Although Procedure No. 5.6.1(III)(D)(6)(b) does he require he cover his Kufi in the general area of MSP, Gray may wear his Kufi uncovered when he is in his cell or participating in a communal religious exercise in the RAC.

Should the Court determine that Gray's ability to wear his Kufi uncovered is substantially burdened, the Court should nonetheless find for the State because Procedure No. 5.6.1(III)(D)(6)(b) is the least restrictive means by which MSP can further its compelling interest in institutional, staff, and inmate security and safety. Procedure No. 5.6.1(III)(D)(6) was developed and adopted to solve the issue of inmates altering and utilizing items of religious personal property to identify themselves and others as gang members. Prior to the adoption of Procedure No. 5.6.1(III)(D)(6), MSP implemented a less-restrictive policy and determined that it was not sufficient.

A. **Gray alleges two distinct sincerely held religious beliefs.**

The Religious Land Use and Institutionalized Persons Act provides:

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an intuition . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

To succeed on a claim under RLUIPA, a Plaintiff must allege that a government action substantially burdens one or more sincerely held religious beliefs. *Fuqua v. Raak*, 120 F.4th 1346, 1353 (9th Cir. 2024). RLUIPA protects broadly "any exercise of religion, *whether or not compelled by* . . . a system of religious belief." *Jones v. Slade*, 23 F.4th 1124, 1144 (9th Cir. 2022) (quoting 42 U.S.C. § 2000cc-5(7)(A) (emphasis in original). The breadth of RLUIPA's protections notwithstanding, a claimant still bears the initial burden of identifying the religious exercise he alleges is substantially burdened. *Holt v. Hobbs*, 574 U.S. 352, 360-61 (2015).

In his complaint, the Plaintiff appears to allege that two distinct practices are substantially burdened by Procedure 5.6.1(III)(D)(6)(b). First, when recounting the factual basis for his claims, the Plaintiff alleges:

> On the date of February 3rd, 2024, Plaintiff submitted a Religious Accommodation Request asking to wear a Kufi *uncovered anywhere within the facility*, stating that it's in Plaintiff's religious beliefs according to the Sunnah which all Muslims adhere to.

(SUF ¶ 9) (emphasis added). Later, the Plaintiff alleges:

> defendants were aware of Plaintiff's religious right to be able to practice his religious belief by *wearing his Kufi at all times*, but were deliberately indifferent to Plaintiff's religious right.

(SUF ¶ 12) (emphasis added). Finally, in his request for relief, the Plaintiff requests this Court grant injunctive relief:

> allow[ing] for inmates to be able to practice their religious belief by wearing their religious head gear/skull caps *at all times, uncovered, anywhere within the facility* in accord with the RLUIPA.

(SUF ¶ 13) (emphasis added).

Accordingly, State Defendants understand that Plaintiff alleges a sincerely held religious belief to 1) wear his Kufi at all times within MSP, and 2) to wear his Kufi uncovered. As the Court noted in its November 19, 2024, Order, the Plaintiff has strategically vacillated between these two distinct claims throughout this litigation, undermining the sincerity of his beliefs. That fact notwithstanding, Defendants do not challenge the sincerity of either of the Plaintiff's asserted beliefs nor that they are protected by RLUIPA.

**B.        Procedure No. 5.6.1(III)(D)(6)(b) does not substantially burden Gray's ability to wear his Kufi anywhere within MSP nor his ability to wear his Kufi uncovered.**

Once the Plaintiff identifies an exercise, rooted in religious belief, he must then demonstrate that government action poses a substantial burden on that exercise. *See Jones*, 23 F.4th at 1140 (citing 42 U.S.C. § 2000cc-2(b)). RLUIPA does not define what constitutes a substantial burden on religious exercise. *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (citing 42 U.S.C. § 2000cc-5). The Ninth Circuit, however, has found:

> A policy may impose a substantial burden on religious exercise in a number of ways. A regulation may impact religious exercise directly, by forbidding conduct that an inmate believes he is religiously compelled to do . . . or by compelling an inmate to do that which he believes he is religiously forbidden from doing.

*Jones*, 24 F.4th at 1140 (citations omitted). Further, where a policy outright bans a particular religious exercise, it is a substantial burden. *Johnson v. Baker*, 23 F.4th 1209, 1215 (9th Cir. 2022) (quoting *Greene v. Solano Cty. Jail*, 513 F.3d 982, 899 (9th Cir. 2008) (internal quotations omitted). However, to be a substantial burden, a policy must impose a "significantly great restriction or onus" upon the Plaintiff's religious exercise. *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004).

Neither of Gray's religious exercises are significantly burdened by Procedure No. 5.6.1(III)(D)(6)(b).

i. *MSP Procedure No. 5.6.1(III)(D)(6)(b) permits Gray to wear his Kufi at all times anywhere within MSP.*

Nothing in Procedure 5.6.1(III)(D)(6)(b) prevents or burdens Gray's ability to wear his Kufi at all times anywhere within MSP. (SUF ¶ 14). Procedure 5.6.1(III)(D)(6)(b) provides:

> 6. Inmates may only utilize their religious personal property items in accordance with the religious purpose for which they were designed. This includes, but is not limited to:
>
> . . .
>
> b. inmates who choose to wear their religious skull caps outside their cell or communal services will wear the skull cap discretely and fully covered underneath an approved cap. Staff may require an inmate to remove, and may search, the religious skull cap at any time for security reasons.

Inmates at MSP are allowed to wear religious headgear, including Kufis, at all times whether in their cell, during religious services in the RAC, or any other places in the prison. (SUF ¶¶ 7, 18, 19). There are only two exceptions to the general rule that inmates can wear religious head coverings: 1) head coverings must be concealed unless the inmate is in their cell or the RAC, and 2) that prison staff are permitted to remove a prisoner's head covering when searches are necessary. (SUF ¶¶ 7, 18-19).

Gray alleges that he is religiously compelled to wear his Kufi at all times. (SUF ¶ 9). Pursuant to Procedure 5.6.1(III)(D)(6)(b), Gray is permitted to wear his Kufi at all times, anywhere in MSP. The Plaintiff is in no way prevented from

wearing his Kufi when he leaves his cell. Gray does not challenge, nor could he, the staff's ability to require him to remove his Kufi for periodic searches. Procedure No. 5.6.1 explicitly allows Plaintiff to do "that which he is religiously compelled to do." *Jones*, 24 F.4th at 1140. As such, the Plaintiff has not demonstrated that any state action has placed a substantial burden on his ability to wear his Kufi at all times.

ii.   *Any burden imposed on Grays ability to wear his Kufi uncovered is minimal and does not constitute a substantial burden under RLUIPA.*

RLUIPA only prevents a state from imposing a substantial burden on an inmate's religious exercise. 42 U.S.C. § 2000cc-1(a); *see also New Harvest Christian Fellowship v. City of Salinas*, 29 F.4th 596, 602 (9th Cir. 2022) (internal citations omitted). Not all burdens are substantial. To succeed under RLUIPA, an inmate must demonstrate that a state action constitutes a "significantly great restriction" on religious exercise. *Warsoldier*, 418 F.3d at 995 (internal quotations and citations omitted).

It does not appear that the Ninthy Circuit has addressed a policy similar to the one at issue here. Courts have found that a policy prohibiting wearing a Kufi outside of an inmate's cell constitutes a substantial burden. *See Hogan v. Idaho State Bd. Of Corr.*, 2018 U.S. Dist. LEXIS 82582, **12-13, No. 1:16-CV-00422-CWD (D. Idaho 2018); *See also Ajala v. West*, 106 F. Supp 3d 976, 979, No. 13-CV-546-BBC (W.D. Wis. 2015). Importantly, however, Procedure

5.6.1(III)(D)(6)(b) does not prevent Gray from wearing his Kufi outside of his cell. It only requires he cover his Kufi when outside of his cell. Because Procedure No. 5.6.1(III)(D)(6)(b) specifically allows Gray to wear his kufi at all times, the policy is merely a minor inconvenience to Gray's religious exercise and does not rise to the level of a substantial burden. *See Int'l Church of the Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1067 (9th Cir. 2011).

Furthermore, Gray retains significant control over when he wears his Kufi uncovered. MSP policy only requires that Gray cover his Kufi when he is in places other than his cell or a communal religious event. If Gray feels compelled to wear his Kufi uncovered, he has a significant ability to do so by choosing to spend more time in his cell or in the RAC when that space is available. Gray himself has some ability to observe his religious tenants more of the time. In large part, it is Gray himself who determines when he must cover his Kufi with a stocking cap.

The challenged procedure allows Gray ample opportunity to engage in the particular religious exercise he believes he is compelled to observe. Any burden to Gray's observance is at most transitory and minor, and Gray himself retains some agency over how great the burden is. Because the Plaintiff cannot demonstrate that Procedure 5.6.1(III)(D)(6)(b) substantially burdens his religious exercise he is unable to satisfy his burden under RLUIPA, and Defendants are entitled judgment as a matter of law. Fed. R. Civ. P. 56(a).

C. **The challenged version of Procedure No. 5.6.1(III)(D)(6)(b) is the least restrictive means by which MSP can achieve its interest in institutional security and is permissible under RLUIPA.**

If a claimant demonstrates that one or more religious exercise is substantially burdened by state action, the state must then show that its actions are the least restrictive means by which it can accomplish a compelling state interest. *See Warsoldier*, 418 F.3d at 669-98.

*i.     The State has compelling interests in reducing gang activity and institutional, staff, and inmate safety.*

A governmental policy that substantially burdens an inmate's religious exercise is only permitted where it furthers a compelling governmental interest. 42 U.S.C. § 2000cc-1(a)(1). When considering whether an institution's stated interest is compelling, the court should "act with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with considerations of costs and limited resources." *Jones*, 23 F.4th at 1141 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005)) (internal quotations omitted).

It is well established that institutional security and the safety of staff and inmates is "central to all other corrections goals." *Pell v. Procunier*, 417 U.S. 817, 823 (1974); *see also Greene v. Solano Cnty. Jail*, 513 F.3d 982, 989 (9th Cir. 2008) (citing *Cutter*, 544 U.S. at 725 n.13). Beyond generalized concerns of institutional

security, other Federal Circuits have recognized that limiting gang activity in an institution is a compelling interest. *See Rios v. Lane*, 812 F.2d 1032, 1037 (7th Cir. 1987) (finding pre-RLUIPA that containing and eliminating prison gang activity is inexorably linked to institutional safety); *see also Cutter*, 544 U.S. at 725 n. 13 (noting that prison gangs will often use religious activity to cloak illicit and violent conduct).

Procedure No. 5.6.1(III)(D)(6) was adopted to combat gang activity within MSP. (SUF ¶ 22). Reducing gang activity, gang violence, and the illicit use of protected religious property is analogous to, if not directly related to, the compelling governmental interests in institutional, staff, and inmate safety. *See Cutter*, 544 U.S. at 725 n. 13. There can be no argument in this case that the State has a compelling governmental interest.

ii.   *The State considered and was forced to reject less restrictive policies before adopting Procedure 5.6.1(III)(D)(6)(b).*

Because the State has demonstrated that its interest in stemming gang activity within MSP is a compelling interest, the only question remaining is whether Procedure 5.6.1(III)(D)(6)(b) is the least restrictive means to further its interest. To satisfy this requirement of RLUIPA, the state must show that "it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. *Warsoldier*, 418 F.3d at 999.

**DEFENDANTS' BRIEF IN SUPPORT OF MOITON FOR SUMMARY JUDGMENT - 13**

Procedure No. 5.6.1(III)(D) was adopted on April 4, 2011. (SUF ¶ 23). Prior to the adoption of Procedure No. 5.6.1(III)(D)(6), MSP had a less restrictive procedure that governed religious personal property. (SUF ¶¶ 17, 23). Under the pre-2011 procedure, the only stated restriction on inmate personal religious property was that inmates could only have items from a pre-approved list. (SUF ¶ 17). The pre-2011 procedure did not provide any restrictions on when inmates could wear or display religious items. (SUF ¶ 17).

In 2011, as a response to inmates utilizing religious personal property to identify themselves and others as gang members, MSP amended Procedure 5.6.1 to include specific rules for the use and display of religious personal property. (SUF ¶ 23). The new Procedure reduced the ability of inmates to misuse religious personal property while still allowing inmates to utilize commonly worn items at all times in all areas of MSP. (SUF ¶ 15). Although the 2011 amendment applied to religious jewelry and medallions such as crucifixes, 5.6.1 was again amended in 2014 to include a provision that applies specifically to religious headgear. (SUF ¶ 24).

The foregoing demonstrates that the State considered and implemented a policy that was less restrictive than the Procedure currently in Place. Because it led to increased gang activity and increased security risks for the staff and inmates of MSP, the pre 2011 policy was rejected. State Defendants have not been able to locate records indicating that when the 2011 amendments were implemented other

less restrictive possibilities were considered. However, the evolution of Procedure No. 5.6.1 clearly indicates that the State has considered less restrictive procedures in the past and has been forced to reject them.

Furthermore, as noted above, Procedure No. 5.6.1(III)(D)(6)(b) is less restrictive than similar procedures that have been found to impose a substantial burden. *See Hogan v. Idaho State Bd. Of Corr.*, 2018 U.S. Dist. LEXIS 82582, **12-13, No. 1:16-CV-00422-CWD (D. Idaho 2018); *See also Ajala v. West*, 106 F. Supp 3d 976, 979, No. 13-CV-546-BBC (W.D. Wis. 2015). The challenged procedure leaves open ample opportunity for Gray to exercise his religion in the manner he sees fit while ensuring the institutional security of MSP.

Accordingly, the State has met its burden of demonstrating that it "actually considered and rejected the efficacy of less restrictive measures" before it adopted the current iteration of Procedure 5.6.1(III)(D)(6)(b). *Warsoldier*, 418 F.3d at 999. For the foregoing reasons, the Court should grant the State Defendants' motion and dismiss Grays claims with prejudice.

## CONCLUSION

The State has demonstrated that Procedure No. 5.6.1(III)(D)(6)(b) does not substantially burden Grays exercise of his religion. However, should the Court find that Grays ability to wear his Kufi uncovered is burdened, summary judgment is

nonetheless appropriate because Procedure No. 5.6.1(III)(D)(6)(b) is the least restrictive means by which the state can achieve its interest in institutional security.

DATED January 5, 2026.

>　　　　　　　　　　　/s/ *Blake R. Koemans*
>　　　　　　　　　　　BLAKE R. KOEMANS
>　　　　　　　　　　　Attorney for Department of Corrections

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January 2026, a copy of the foregoing Unopposed Motion to Extend Deadlines was served on the following people by the following means:

```
   1     CM/ECF
   2     Hand Delivery
_____  Mail
_____  Overnight Delivery Service
_____  Fax
_____  E-Mail
```

1. Clerk, U.S. District Court

2. Reginald C. Gray
   AO# 3036056 Montana State Prison
   700 Conley Lake Road
   Deer Lodge, Montana 59722

>　　　　　　　　　　　/s/ *Blake R.* Koemans
>　　　　　　　　　　　BLAKE R. KOEMANS
>　　　　　　　　　　　Attorney for Department of Corrections