IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | | |
|---|---|---|
| REGINALD COREY GRAY,<br>Plaintiff,<br><br>vs.<br><br>BRIAN GOOTKIN, JIM SALMONSEN,<br>CHRIS LAMB, TERRIE STEFALO,<br>Defendants. | ) | Case No. CV 24-40-H-WWM<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO<br>DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT |

Plaintiff respectfully submits this Response in Opposition to Defendant's Motion for Summary Judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendant's argue that there are no genuine disputes of material fact and that it is entitled to judgement as a matter of law. However, when the evidence is viewed in the light most favorable to the Plaintiff-as required at the summary judgement stage-multiple material factual disputes remain

Because a reasonable jury could find in favor of Plaintiff, Defendant's motion must be denied.

DATED March 14, 2026.

Reginald Corey Gray
Reginald Corey Gray
Plaintiff Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on the 14th of March 2026,a copy of the foregoing document was served on the following people by the following means:

1 CM/ECF

2 CM/ECF

1. Clerk, U.S. District Court

2. Blake R. Koemans
Attorney for Montana Department of Corrections

Reginald Corey Gray

Reginald Corey Gray
Plaintiff Pro Se
Montana State Prison #3036056
700 Conley Lake Road
Deer Lodge,MT 59722

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | | |
|---|---|---|
| REGINALD COREY GRAY,<br>Plaintiff,<br><br>vs.<br><br>BRIAN GOOTKIN,JIM SALMONSEN,<br>CHRIS LAMB,TERRIE STEFALO,<br>Defendants. | ) | PLAINTIFF'S BRIEF IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT |

COMES NOW, REGINALD Corey Gray,plaintiff Pro Se,and submits this Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgement.

## INTRODUCTION

Plaintiff submits this brief in support of Plaintiff's Opposition to defendants' Motion for Summary Judgement filed herewith,and ask this Court that the defendants' Motion be denied. Defendants have failed to demonstrate that dismissal is appropriate as a matter of law,i.e.,(1) Plaintiff claim of RLUIPA is cognizable under federal law; (2) The defendant has not considered the efficacy of least-restrictive alternatives to a total ban on wearing of religious headwear at any and all times throughout the facility in its prisons and therefore has infringed upon the protections provided State inmates under the Religious Land Use and Institutionalized Persons Act(RLUIPA),42 U.S.C. §2000cc,et.seq. (3) Material facts remain in genuine dispute for resolution at trial.

## STATEMENT OF FACTS

Procedural Facts

On December 20,2023 Plaintiff arrived at Montana State Prison and upon his arrival his religious headwear was confiscated and turned over to inmate property for a contraband inspection. On the date of December 26,2023 plaintiff submitted an Offender/Staff Request (OSR) Form to the RAC Terrie Stefalo asking the reason for the his kufi being taken and not returned to him. On the date of January 8,2024 Plaintiff's kufi was returned to him. As plaintiff exited his cell wearing his kufi he was approached by staff and informed that he could not wear his kufi outside of his cell. Plaintiff filed an Inmate/Offender Informal resolution Form and submitted it on January 8.2024,to grieve the issue. On the date of January 9,2024,Unit Manager Bouley responded and stated "You can wear the kufi in your cell without covering it." In the dayroom you can wear it but it must be covered with a stocking cap. On the date of January 10,2024,plaintiff filed an Inmate/Offender Grievance Form requesting that the policy be reviewed and changed due to the wearing of the kufi posing no security issues and that this policy being in violation of plaintiff's constitutional rights. On the date of February 3,2024 plaintiff submitted a Religious Accommodation Request asking to be able to wear a kufi uncovered anywhere within the facility,stating that its in plaintiff's religious belief according to the Sunnah which all muslims adhere to. On February 15,2024,plaintiff recieved an answer to his Religious Accommodation request that stated " on February 13,2024,the Religious Issues Committee met,and plaintiff request was considered and denied. On the date of February 20,2024, the Warden responded to Inmate/Offender Grievance Form and stated "DENIED-

policy will not be changed. You may wear your kufi in your cell. If you wear it outside your cell, it must be covered by a baseball cap or stocking cap". On the date of March 1,2024,plaintiff appealed Wardens decision to the Corrections Director by way of an Inmate/offender Grievance Appeal to the Director of Corrections. On the date of April 2,2024 plaintiff received a response from the Director's Office stating " The current procedure states; "inmates who chose to wear their religious skull cap outside their cell or commercial services will wear the skull cap discreetly and fully covered underneath an approved cap". upon review of the noted cases in youe appeal,I find no evidence to support changing the procedure.

Afterward,plaintiff initiated this lawsuit by submitting a Complaint to the United States District Court on June 24,2024. The Initial Review Order of July 30, 2024,granted Plaintiff leave to proceed with his RLUIPA claim for declatory and injunctive relief against the defendants.

Substantive Facts

Plaintiff is a practitioner of the Islamic religion.Throughout plaintiff's life it has been the religious practice of himself,and the Islamic community to adhere to the sunnah of the Prophet and wear a kufi at all times. Soon after entering the Montana State Prison custody the plaintiff began initiating request to the facility chaplain and composing formal requesty to the Religious Issuses Committee to permit inmates of the Islamic Faith to be able to wear their kufi at all times anywhere throughout the facility and that the wearing of the kufi at all times was consistant with Islamic religious practices. The Religious Issues Committee however,denied the religious request on the ground of its preexisiting policy banning the wearing of religious headwear unless its discreetly and fully covered underneath an approved cap. (MSP policy No.5.6.1(111)(D)(6)

ARGUEMENT

Standard of Law

The RLUIPA provides that [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution even if the burden results from a rule of a general applicability,unless the governmrent demonstrate that imposition of the burden on the person (1) is in furtherance of a compelling government interest;and (2) is the least-restrictive means of furthering that compelling government interest. 42 U.S.C. § 2000cc-1(a).

Under RLUIPA,it's the plaintiff burden to prove that there is a substantial burden to a sincerely held religious belief. Yellowbear v. Lampert,741 F.3d 48,55(10th Cir. 2014). However, the belief at issue need not be compelled by,nor central to,a religious system. See § 2000cc-5(7)(A); Holt v. Hobbs,574 U.S. 352, 359 (2015). Nor is RLUIPA protection limited to beliefs which are shared by all of the members of a religicus sect. Holt,574 U.S. at 361 (citation omitted). And whether alternative means for a prisoner to exercise his religious belief are available is not determinative,because "RLUIPAs substantial burden inquiry asks whether the government has substantially burdened religious exercise...,not whether the RLUIPA claimant is able to engage in other forms of religious exercise i.d. Morever a "substantial burden " need not be a complete or total one.

Once the RLUIPA claimant establishes a substantial burden to a sincerely held religious belief,the burdens shifts to the defendant government to prove both (1) a compelling government interest in preventing the religious exercise and (2) that the least-restrictive means was used to further the compelling interest. generalized assertions of interest in maintaining prison order,security, conservation of resources,or other plausible compelling government interset are insufficent. Gonzales v, O Centro Beneficente Uniao Do Vegetal,546 U.S. 418,431 (2006). Yellowbear,at 59.

Rather,proof of the asserted compelling interest is necessary because "RLUIPA require[a Court] to scrutinize the asserted harm,of granting specific exceptions to particular religious claimants and look to the marginal interest in enforcing the challenged government action in a particular context "Holt,at 361 (quotation marks and citation omitted).

Provided the defendant government has proved compelling interest,it must still prove that it has adopted the least-restrictive means to protect that interest. "The least-restrictive standard is exceptionally demanding,and it requires the government to show that it lacked other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party. "Holt,at 363. Additionally the defendant government cannot meet its burden to prove least-restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of least-restrictive measure U.S. v. Playboy Entm't Group,Inc.,529 U.S. 803,824 (2000).

SUBSTANTIAL BURDEN ON SINCERELY HELD RELIGIOUS BELIEF

Defendants contend that MSP policy does not substantially burden Plaintiff's religious belief that he must wear a kufi at all time and the thrust of defendants' arguement is that plaintiff makes no claim as to how or why MSPs religious head covering policy substantially burdens his religious right beyond simply alleging that wearing a kufi is his religious belief. the defendants' own language is perhaps the best illustration of their arguement:

> Gray is an inmate currently incarcerated at MSP. He is a practing Muslim who choses to wear a kufi for religious purposes. Soon after his arrival at MSP Gray was informed that,pursuant to MSP Procedure 5.6.1, he is only allowed to wear his exposed kufi while he is inside his cell or attending religious services and events. Otherwise,all out-of-cell movement requires Gray to cover his kufi completely with an approved,prison-issued cap. MSP's head covering policy does not bar gray from wearing his kufi-it only bars him from wearing it uncovered outside of his cell or outside of religious services. This requirement is not a great or onus upon Gray's religious exercise.

However,RLUIPA specifically provides that religious exercise includes "any exercise of religion, whether or not compelled by or central to , a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).The statue thus "bars inquiry into whether a particular belief or practice is central' to a prisoner's religion." Cutter v. Wilkinson,544 U.S. 709,725n.1,125 S.Ct. 2113,161 L.Ed.2d. 1020(2005) Therefore,contrary to defendants' arguements,Courts must not attempt to test the sincerity of a belief by "determin[ing] the place of a particular belief in a religion or the plausibility of a religious claim." Employment Div. v. Smith,494 U.S. 872,887,110 S. Ct. 1595,108 L.Ed.2d 876 (1990) Additionally, Courts may not question the validity of a prisoner's interpretation of religious creeds. Nance v. Miser,700 F.App'x 629,631 (9th Cir.2017). Citing Hernandez v. C.I.R.,490 U.S.680 699,109 S.Ct. 2136,104 L.Ed.2d. 766 (1989).

Plaintiff must show also that MSP policy substantially burden such sincerly held religious belief. Although RLUIPA does not define substantial burden,the Ninth Circuit Court of Appeals describe it as a burden that imposes "a significsntly great restriction or onus." Warsoldier v. Woodford,418 F.3d 989,995(9th Cir.2005). A substantial burden is found also where "punishments[...] coerce a religious adherent to forgo her or his religious beliefs." Warsoldier,418 f.3d at 996. Furthermore,any "outright ban on a particular religious exercise is a substantial burden" on that exercise. Greene v. Solano Cty Jail,513 F.3d. 982,988(0th Cir.2017). And even where the compulsion to modify behavior may be indirect," the infrigement upon free exercise is nonetheless substantial." 108 F.Supp.3d. at 712(citing Thomas v. review Bd. of Ind. Employment Sec.Div.,450 U.S. 707,715-716,101 S.Ct. 1425,67 L.Ed. 2d. 624(1981).

MSP's religious policy prohibits plaintiff from wearing his kufi uncovered at any time other than when he is in his cell,or during a religious service. MSP policy also prohibits plaintiff from wearing his kufi at all during inmate visitation and facility scheduled photo takes. (Ex. B)(Ex. D) The policy directly bans plaintiff from wearing it all times uncovered,as he believes is required. If plaintiff violates the policy by wearing his kufi uncovered at designated times or places,he will face disciplinary action. plaintiff asserts that this policy puts him to the daily decision of whether to adhere to his sincerely held belief or to face disciplinary action. defendants argue that the limitations in the religious policy does not place "significantly great restriction on the exercise of plaintiff's religion. however,even though the policy makes religious accommodations such accommodations do not permit the specific religious belief identified by plaintiff. See Nance,700 F.App'x at 632. Additionally,the threat of punishment for a failure to adhere to policies has been held to be sufficiently coercive under both the Supreme Court and Ninth Circuit precdent. Holt, 135 S. Ct. at 862; Warsoldier,418 F.3d. at 996.

Therfore,in light of the record before the Court, there is a triable issue of fact as to whetcher Defendants' policy substantially burden plaintiff's ability to exercise his belief by wearing a kufi at all times throughout the facility. As such, Defendants ' Motion for Summary Judgement fails as to this issue.

COMPELLING GOVERNMENT INTEREST and LEAST RESTRICTIVE MEANS

Defendants asert that,even if the Court finds that the plaintiff has presented sufficient evidence that his beliefs are sincerely held and his beliefs are substantially burdened by the policy, they are nevertheless entitled to Summary Judgement because the MSP policy further compelling government interest in maintaining security,reducing religious and racially= motivated violence,and discouraging gang affiliation by the least restrictive means. The Supreme Court of The United states has acknowledged that "maintaining good order,security,and discipline,consistent with consideration of costs and limited resources," is a compelling government interest. Cutter v. Wilkinson,544 U.S. 70 722,125 S. Ct. 2113,161 L. Ed. 2d. 1020 (2005). the plaintiff admits that maintaining security is a compelling interest.

The disputed issue on this aspect of the Motion is whether the Court can conclude there are no genuinely disputed material facts relating to the defendants' contention that the government's policy are the least restrictive means of furthing interest in maintaing security and discouraging gang affiliation." When the moving party also bears the burden of persuasion at trial,to prevail on a Motion for Summary Judgement,it must show " the evidence is so powerful that no reasonable jury would free to disbeleive it." Shakur v. Schiro,514 F.3d. 878,890 (9th Cir.2008) (citing 11-56 Moore's federal Practice-Civil § 56.13) (also citing Edison v. reliable Life Ins.Co. 664 F.2d 1130,1131 (9th Cir.1981). the government " cannot meet its burden to prove least-restrictive means unless it demonstrate that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." Warsoldier,418 F.3d at 996

The defendants admit by their own admission that no record exist of the defendants ever considering any least restrictive means. ( Defendant's Brief in support of Motion for Summary Judgement page - 14) Here defendants assert they have narrowly tailored the religious policy to serve their compelling government interest. defendants asssert that the covering of headwear policy is the least restrictive means to promote their interest in discouraging gang affiliation. In response plaintiff points to other MSP policies and practices that either resolve the compelling interest asserted or present similiar issues regarding security. First,plaintiff alleges that MSP allows prisoners to wear knitted hats to stay warm in many of the areas where plaintiff wants to wear his kufi. Secondly, and finally,plaintiff asserts that many prisoners have gang -related tattoos that are not required to be covered,nor does MSP have any policy in place that requires that any religious depictions

of symbols be covered. If the defendants compelling interest was to discourage gang affiliation the policy would also include the covering of tattoos,especially being that the defendants will admit that tattoos are the number one way that staff and inmates are able to identify someone with gang affiliations. (Ex. C). Furthermore, it is the practice of MSP to house inmates according to their gang affiliation.

Defendants in turn,do not present evidence that MSP actually considered and reject the eficacy of less restrictive measures,such as researched other prison populations policies related to the wearing of kufis at all times. In Ali v. Stephens,69 F.Supp.3d 633,the record reflected that 41 States and the Federal Bureau of Prisons (BOP) allow inmates to wear kufis. Of those correction sysytems,the California department of Corrections and Rehabilitation (CDCR) and the BOP have comparably large prison populations. Although those prison sysytem allow kufis to be worn throughout the prison,it does not present a security issue. In the BOP,inmates with kufis are part of the daily routine,and they do not require additional security measures,metal detectors,or electric fencing. The security concerns expressed by the defendants,in reality,turn out to be insignificant,and they are not shared by the experts who work in facilities that allow kufis.

Instead,the record contains only assertions that denying plaintiff request to wear his kufi cap at all times uncovered throughout the facility was the least restrictive means of furthing the government's asserted interest. see Shakur v. Schriro,514 F.3d 878,890-891(9th Cir.2008). (where the record contained only conclusory assertions that denying a prisoner a kosher diet was the least restrictive means to further cost containment interest). thus,defendant have not met their burden of showing they actually considered other means of achieving the asserted interest. further,Plaintiff has raised questions of material fact regarding whether defendants' policy is the least restrictive means to achieve such asserted interest. Therefore,,defendant's Motion for Summary Judgement is inappropriate on this ground.

In sum there is a factual dispute as to: (1) the extent plaintiff religious activities are burdened by the MSP policy (2) the extent Defendants would be burdened if they did accommodate plaintiff's request and (3) whether there are less restrictive alternatives available. Therefore,the Court should not conclude that defendants Motion for summary Judgement is appropriate.

CONCLUSION

The defendant possesses no bases to dispute the sincerity of plaintiff's belief in having to wear his kufi at all times uncovered,nor can the defendant be in legal position to define the religious significance of wearing the kufi at all times uncovered by the muslim faith. And although the defendant may arguably have a compelling government interest in security.or discouraging gang affiliation,the defendants have netherless " failed to meaningfully explain how being able to wear a kufi at all times uncovered a measure that is less restrictive than an outright ban would not be a means of achieving their interest in order and security."id. This Court should,for the above reasons,grant plaintiff's opposition to defendants' Motion for Summary Judgement and issue its Order consistent with the relief sought in the Complaint herein.

DATED this the 14th day of March,2026.

Reginald Corey Gray
Plaintiff Pro Se

CERTIFICATE OF SERVICE

I hereby certify that onthe 14th day of March,2026, a copy of the foregoing document Plaintiff's Brief in Support Of Opposition To Defendants' Motion for Summary Judgement was served on the follo people by the following means:

___1___ CM/ECF

___2___ CM/ECF

1. Clerk,U.S. District Court
2. Blake R. Koemans
   Attorney for the Montana Department of Corrections

Dated this the 14th day of March,2026.

Reginald Corey Gray
Plaintiff Pro Se
Montana State Prison #3036056
700 Conley Lake Road
Deer Lodge,Mt 59722

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

REGINALD COREY GRAY,
Plaintiff,

vs.

BRIAN GOOTKIN,JIM SALMONSEN,
CHRIS LAMB,TERRIE STEFALO,
Defendants.

MEMORANDUM OF LAW IN SUPPORT

1. LEGAL STANDARD

Summary judgement is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed.R.Civ.P. 56(a).

The Court must view all evidence and draw all reasonable inferences in favor of the non-moving party. See Anderson v. Liberty Lobby,Inc.,477 U.S. 242 (1986).

If a reasonable jury could return a verdict for the non-moving party,summary judgement must be denied.

11. GENUINE ISSUES OF MATERIAL FACT EXIST

Defendant asserts that Plaintiff cannot establish essential elements of the claim.However, the evidence demonstrates otherwise.

For example,by the defendant's own admission,and evidence submitted by both the Plaintfiff and defendants confirm that:

- The current policy imposes a substantial burden on Plaintiff 's religious belief
- The current policy is not the least-restrictive means ,nor has the defendant's even considered any least-restrictive means
- The current policy does not serve as a means to to a Compelling Government Interest

Because the record contains evidence supporting each element of Plaintiff's claim,summary judgement is improper.

111. DEFENDANT'S ARGUEMENTS RELY ON DISPUTED FACTS

Defendant's motion improperly asks the Court to weigh evidence and make credibility determinations,which are functions reserved for the jury.

Courts consistently hold that summary judgement is inappropriate where witness testimony conflicts or factual interpretations differ.

## IV. PLAINTIFF HAS PRESENTED SUFFICIENT EVIDENCE

Plaintiff has produced documentary evidence,and other materials demonstrating that defendant's conduct caused the harm alleged in the complaint.

These materials create genuine disputes of material fact requiring a trial.

## V. DEFENDANT MISCHARACTERIZES THE RECORD

Defendant selectively cites evidence while ignoring substantial contradictory evidence in the record.

Courts consistently reject summary judgement where the moving party attempts to reinterpret disputed facts in its favor.

Here Plaintiff has produced:

- sworn testimony
- documentary evidence
- records supporting damages

This evidence establishes a Triable issue.

## VI. A REASONABLE JURY COULD FIND FOR PLAINTIFF

When the evidence is properly viewed under Rule 56, a reasonable jury could conclude that Defendant's conduct caused Plaintiff's damage.

Because geniune issues of material fact remain,summary judgement is inappropriate.

CONCLUSION

For the foregoing reasons,Plaintiff respectfully request that this Court deny Defendant's Motion for Summary Judgement.

Respectfully Submitted.

Reginald Corey Gray
Plaintiff Pro Se
Montana State Prison # 3036056
Deer Lodge,MT 59722

Dated this the 14th day of March,2026.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

REGINALD COREY GRAY,
Plaintiff,

vs.

BRIAN GOOTKIN, JIM SALMONSEN,
CHRIS LAMB, TERRIE LAMB,
Defendants.

PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS

Plaintiff respectfully submits the following opposing statement of material facts in support of Plaintiff's Opposition To Defendant's Motion For Summary judgement.

1. Agreed
2. Agreed
3. Agreed
4. Agreed
5. Agreed
6. Agreed
7. Agreed
8. Agreed
9. Agreed
10. Agreed (EX. A)
11. Agreed
12. Agreed
13. Agreed
14. Disagree. MSP does not allow for the wearing of religious headgear, including Kufi's, at all times anywhere within MSP. Inmates are not allowed to wear religious headgear in or during inmate visitation with their family, nor during scheduled Rec/gym Photos. Inmates are not allowed to wear their religious headgear at these locations even if they are covered up with an approved cap. (EX. B) (Ex. D)
15. Disagree. In the defendants own admission they never considered any less restrictive means nor do they have any records indicating they had considered any less restrictive means. furthermore, the defendants also admit that the policy was due to inmates using religious items such as jewerly and crucifixes, not headgear. (Defendants Brief in Support of Motion for Summary Judgement Page - 14).
16. Agreed
17. Agreed

18. Agreed
19. Agreed
20. Agreed
21. Agreed
22. Agreed
23. Agreed
24. Agreed
25. Agreed
26. Agreed
27. Agreed
28. Agreed

Respectfully submitted this the 14th day of March,2026.

Reginald Corey Gray
Plaintiff Pro Se

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March 2026, a copy of the foregoing document Plaintiff's response to Defendants Statement Of Material Facts was served on the following people by the following means:

___1___ CM/ECF

___2___ CM/ECF

1. Clerk, U.S. District Court

2. Blake R. Koemans
   Attorney for the Montana Department of Corrections

Reginald Corey Gray
Plaintiff Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

REGINALD COREY GRAY,
Plaintiff,

vs.

BRIAN GOOTKIN, JIM SALMONSEN,
CHRIS LAMB, TERRIE STEFALO,
Defendants.

PLAINTIFF'S STATEMENT OF DISPUTED FACTS

1. Plaintiff incorporates the allegations of the Complaint as it fully stated herein.

2. The current policy substantially burdens plaintiff's religious exercise and is not the least-restrictive means by which the State can achieve its compelling interest in maintaining institutional, staff, and inmate safety. The State initial defense rested on the arguement that by wearing a kufi uncovered it could cause plaintiff to be attacked due to his religious affiliation, and makes it easier to recognize him as a muslim inmate. The State now takes the position of the kufi could be used as a gang identifier. The State contends that they have no record of ever considering the least-restrictive means, Furthermore, at the February 13, 2024 Religious Issues Committee Meeting, the record reflects that they only considered if this request was within policy, not the legality of the policy or if it was within my religious right. (Ex. E 1, E 2).

3. There is no policy in place at MSP that restricts inmates nor staff from displaying religious tattoos or requiring the inmate nor the staff to keep such depictions covered. The only policy that is in place is for staff, Policy DOC 1.3.57 and this policy clearly states that employees that have tattoos and/or branding: Obscene, racially/ethically derogatory, and/or gang tattoos or brandings shall not be visible. It mentions nothing about religious depictions. This policy only pertains to Staff, there is no policy in place for inmates that require covering of tattoos, obscene, racially/ethically derogatory, and/or gang tattoos, or brandings shall be covered as the policy states for inmates wearing religious headwear. (Ex. C).

4. The policy now in place at MSP punishes inmates with disciplinary action if the inmate choses to wear his kufi uncovered anywhere except while in his cell or at the Religious Activity Center. This policy places a substantial burden on plaintiff by having to choose between adhereing to his religious belief and facing disciplinary action.

5. The current policy in place was never implemented due to inmates using religious headwear to be identified as a gang member. There is nothing in the record which supports the institution ever having an issue with inmates altering their religious headwear to use as a gang identifier.

6. The number one way for staff and/or inmates to identify another gang member is tattoos or where the facility has housed the inmate, being MSP houses inmates according to their gang affiliation.

7. MSP does not allow the wearing of religious headwear,including kufi's at all times anywhere within the facility. Inmates are not allowed to wear religious headwear in or during inmate visitation with their family,nor during scheduled Rec/Gym Photos. Inmates are not allowed to wear their religious headwear at these locations even if they are covered up with an approved cap. (Ex. B) (Ex. D).

8. In the defendants own admission they never considered any least-restrictive means ,nor do they have any records indicating they had considered any least-restrictive means.Furthermore, the defendants also admit that the policy was due to inmates using religious items such as jewerly and crucifixes,not headwear. ( Defendant's Brief in Support of Motion for Summary Judgement page - 14).

Dated this the 14th day of March,2026.

Reginald Corey Gray
Plaintiff Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March,2026, a copy of the foregoing document Plaintiff's Statement of Disputed Facts was served on the following people by the following means:

____1____ CM/ECF

____2____ CM/ECF

1. Clerk, U.S. District Court

2. Blake R. Koemans
   Attorney for the Montana Department of Corrections

Dated this the 14th day of March,2026

Reginald Corey Gray
Plaintiff Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

REGINALD COREY GRAY,
Plaintiff,

vs.

BRIAN GOOTKIN, JIM SALMONSEN,
CHRIS LAMB, TERRIE STEFALO,
Defendants.

APPENDIX OF EVIDENCE

Exhibit A - Documentary evidence showing Plaintiff's belief as applies to the head covering.

Exhibit B - Documentary evidence showing inmates can not wear head coverings anywhere within facility as Defendants claim.

Exhibit C - Documentary evidence that shows that there is no policy in place for staff nor inmates that requires for tattoos which depicts religious symbols be covered as the policy requires for religious head coverings.

Exhibit D - Documentary evidence showing that inmates are not allowed to wear haed covering any where within the facility as defendants claim. Inmates are not allowed to wear any head coverings or hats during inmate visitation.

Exhibit E 1 - Documentary evidence showing that during the February 13,2024 Religious Issues Committee Meeting the record reflects that the least-restrictive means was never discussed nor considered in deciding plaintiff request to wear his kufi uncovered

Exhibit E 2 - Countierce of exhibit E 1.

Exhibit F - Plaintiff's Affidavit

Ex. A

Kufi: Sunnah, Etiquette, and Evidence

(Sunnah al-Adah) and a sign of religious identity and modesty.

**1. Evidence from the Sunnah**

There are several narrations (Hadiths) that describe the Prophet covering his head:

- **The Use of Turbans and Caps:** Narrations indicate the Prophet wore both a turban (Imamah) and a cap underneath it.

  "He used to wear a cap (qalansuwa) under his turban and he used to wear a cap without a turban." (Recorded in Jami' al-Tirmidhi and Shama'il al-Tirmidhi)

- **A Symbol of Distinction:** The Prophet mentioned that the head covering served to distinguish Muslims from others.

  "The difference between us and the polytheists is the turban over the cap." (Sunan Abi Dawood).

- **Constant Practice:** Scholars like Ibn al-Qayyim noted that the Prophet was rarely seen in public without his head covered, except during the state of Ihram for Hajj or Umrah.

**2. Scholarly Opinions on Public Wear**

Scholars generally categorize wearing a kufi in public into two perspectives:

| Perspective | Description |
|---|---|
| Mustahabb (Recommended) | [illegible] the Prophet [illegible] Muslim. |
| Mubah (Permissible/Customary) | Others view it as a cultural practice of the time [illegible] [illegible] better to [illegible] |

**Note on "Muru'ah" (Dignity):** Historically, classical scholars like Imam Al-Shatibi argued that in societies where men of status cover their heads, going bareheaded in public could be seen as a lack of muru'ah (manliness/dignity).

**3. Etiquette (Adab) for Wearing a Kufi**

If you choose to wear a kufi as an act of Sunnah, there are certain etiquettes to keep in mind:

- **Intention (Niyyah):** Wear it with the intention of following the Sunnah or identifying as a Muslim, rather than for vanity or fashion alone.

fearing" community.

**3. The Shafi'i and Hanbali Schools: Emulation and Identity**

These schools focus heavily on the Hadith evidence of the Prophet's physical appearance.

- **Shafi'i View:** They emphasize that the Prophet wore a Qalansuwa (cap) and that uncovering the head in public is a "departure from the way of the righteous."
- **Hanbali View:** Imam Ahmad ibn Hanbal was known to be very strict in following the Athar (reports of the companions). If the companions did it, it was considered the "Path of the Believers."
- **Evidence of Distinction:** They cite the Hadith: "The difference between us and the polytheists is the turban over the cap" (Abu Dawood). This narration specifically frames the head covering as a tool for identity and distinction.

**Summary of "Mandatory" Contexts**

While you will not find a ruling saying a man goes to Hell for not wearing a kufi (unlike the hijab for women), scholars categorize it as "essential" in the following ways:

| School | Reason for "Mandatory" Label | Source/Concept |
|---|---|---|
| Hanafi | To avoid the Makruh (disliked) state during Salah | Zeenah (Adornment) |
| Maliki | To maintain Muru'ah (social dignity/standing). | Amal (Practice of Madinah) |
| All Schools | To uphold "Distinction" from non-Muslims | Tashabbuh (Avoidance of imitating others) |

**Key Takeaway:** The "mandate" is one of **adab (etiquette) and identity**. If a man abandons the kufi to intentionally look like a non-believer or because he feels the Sunnah is "outdated," the scholars view this as a serious spiritual defect.

**Would you like me to look up the specific descriptions of the Prophet's caps (Qalansuwa) from the Shama'il al-Tirmidhi to see exactly what they looked like?**

Kufi: Sunnah, Etiquette, and Evidence

However, there is a strong scholarly consensus that it is mandatory as a "**Sunnah of Distinction**" or a matter of **Dignity (Muru'ah)**. In this context, "mandatory" is used by jurists to describe the preservation of a Muslim man's character and public testimony.

**1. The Hanafi School: Distinction and Decorum**

The Hanafi school emphasizes the kufi as a key part of "adornment" (Zeenah) mentioned in the Quran (7:31).

- **The Ruling:** They view praying bareheaded due to laziness or a desire to follow non-Muslim fashion as **Makruh Tanzihan** (slightly disliked/reprehensible).
- **Narrations/Evidence:** Hanafis often cite the practice of the people of Madinah. Imam Abu Hanifah followed this custom because the Prophet and the Sahaba consistently covered their heads.
- **Mandatory for "Muru'ah":** In Hanafi jurisprudence, a man who habitually goes bareheaded in a society where the righteous cover their heads could have his **legal testimony** (Shahadah) **rejected** in a Sharia court, as it was seen as a sign of a lack of dignity or seriousness.

**2. The Maliki School: The Standard of "Al-Amal"**

Imam Malik placed great weight on the "Practice of the People of Madinah" (Amal Ahl al-Madinah).

- **The Ruling:** For the Malikis, a man's public appearance is a reflection of his piety.
- **Narrations/Evidence:** They rely on the fact that the Prophet was never seen in public with an uncovered head except during Ihram.
- **Distinction:** Maliki scholars like **Al-Shatibi** argued that while the act itself is customary, it becomes a "Sunnah of Distinction" because it separates the Muslim from the Fussaq (transgressors) or non-believers. In his work Al-Muwafaqat, he explains that dress is a means of identifying with the "God-fearing" community.

**3. The Shafi'i and Hanbali Schools: Emulation and Identity**

These schools focus heavily on the Hadith evidence of the Prophet's physical appearance.

- **Shafi'i View:** They emphasize that the Prophet wore a Qalansuwa (cap) and that uncovering the head in public is a "departure from the way of the righteous."
- **Hanbali View:** Imam Ahmad ibn Hanbal was known to be very strict in following the Athar (reports of the companions). If the companions did it, it was considered the "Path of the Believers."
- **Evidence of Distinction:** They cite the Hadith: "The difference between us and the polytheists is the turban over the cap" (Abu Dawood). This narration specifically frames the head covering as a tool for

 Ex. B

# REC/Gym Photos

11/15/2024

Gym/rec photos will be purchased by IWF. Photos will be taken during your regular gym time. No make-up days will be available if you do not show up to gym on the scheduled dates below.

Photos will be taken for Low side and High side on December 5th and 6th during your units scheduled gym time.

WRC photos will be taken Saturday December 7th at 4:00.

In the event that you are placed in detention or PHC, NO photos will be taken. There will be no photos taken for PHC or Detention blocks. NO exceptions will be made.

You must wear appropriate gym attire or state issued clothing. No holes or dirty/stained clothing. All clothing must be worn appropriately.

Photos will be limited to 2 single photos per inmate or 1 single and 1 group photo. You cannot have 2 group photos. You will receive doubles of each photo. That's 2 pictures 2 copies of each for a total of 4.

Rules for taking photos are as follows:

No gang signs, inappropriate gestures, religious medallions, or hats. Long hair must be pulled up in a hair tie. **Photos with questionable or improper content will not be delivered.**

For questions or concerns send an OSR to:

Visiting Supervisor Lt. Cunningham

LT C[signature]

**POLICY DIRECTIVE**

| | |
|---|---|
| Policy: | **DOC 1.3.57 SECURE FACILITY EMPLOYEE GROOMING, HYGIENE, AND CLOTHING** |
| Effective Date: | 03/31/2025 Page 1 of 2 |
| Revision Date(s): | |
| Signature/Title: | /s/ Jim Anderson, Public Safety Division Chief |

## I. POLICY

The Department of Corrections will ensure that all secure facility employees maintain grooming, hygiene, and clothing appropriate to their specific duties.

## II. APPLICABILITY

All secure facilities.

## III. DEFINITIONS: See Glossary

## IV. DEPARTMENT DIRECTIVES

### A. General Requirements

1. In the interests of presenting a professional image to the public and co-workers and serving as a positive role model for inmates, secure facility employees must observe acceptable habits of grooming, hygiene, and clothing.
2. Supervisors are responsible for enforcing the standards of this policy in their work areas.
3. Questions about what constitutes appropriate grooming, hygiene, and clothing may be directed to the position's chain of command or Human Resources.
4. Administrators may establish additional standards as needed for the unique health, safety, modeling, and public image requirements of the work area.
5. The requirements of this policy will not apply to employees who have requested and received a waiver for cultural, medical, disability, or religious purposes. Any person who has a condition due to a protected category (for example, religion or physical disability) that affects any aspect of standards covered by this policy may qualify for an accommodation and should report the need for an accommodation to Human Resources.

### B. Uniformed and Non-Uniformed Staff Grooming and Hygiene

1. Hair:
   a. All hairstyles must:
      1) be worn in a safe manner,
      2) not cover any portion of the eyebrows, and
      3) be secured under personal protective equipment when required.
   b. Non-natural hair coloring, such as purple, orange, green, pink, bright red, and fluorescent (or neon) colors are not permitted.
   c. Staff may not cut shaved designs into their hair.
   d. Staff may wear simple barrettes and pins if they do not pose a safety hazard.
2. Facial Hair:
   a. Beards, sideburns, and mustaches are authorized. They shall be well-groomed, neat, clean, and not pose an officer safety hazard.

3. Jewelry and Piercings:
   a. Jewelry may be worn if it is professional and does not pose a safety hazard.
   b. Ear gauges/plugs, if worn, must not present a safety hazard. Ear gauges/plugs must be plain in color and without branding or logos.

4. Tattoos and/or Brandings:
   a. Obscene, racially/ethnically derogatory, and/or gang tattoos or brandings shall not be visible.

5. Personal Hygiene:
   a. All staff must maintain proper personal hygiene.
   b. Fingernails must be trimmed and not pose a safety risk. Nail polish and nail art must be appropriate.

**C. Clothing and Uniforms**

1. Employees must wear clothing that is clean, in good repair, well fitting, and appropriate for the assigned work area.

2. Officers will be issued gear consistent with the Collective Bargaining Agreement, if applicable, and appropriate for the area to which the officer is assigned.
   a. Full uniforms are required to be worn on duty, when in direct contact with the public in an official capacity, or when designated by the Administrator. They are not to be worn while off duty, except when traveling to or from work. Staff are not allowed to purchase alcohol or marijuana while in uniform. A full uniform will include the following items:
      1) state-issued work shirt
      2) state-issued undershirt
      3) state-issued pants
      4) state-issued duty belt with issued attachments
         a) an official badge must be attached to duty belt if the employee has been issued one
      5) state-issued boots
      6) state-issued identification card
      7) state-issued hat or beanie (optional) worn with bill or logo facing forward
      8) state-issued multiple piece coat (optional)
         a) the coat consists of pieces that may be added or removed depending on the current climate
   b. Facilities will follow established requirements for the issuing, return, and exchanges of uniforms.

3. When an employee resigns, is terminated, or retires, their supervisor will collect all state-issued uniforms and accessories, as well as state-issued identification cards.

**D. Official Badges**

1. Applicable employees will be issued an official badge upon the start of employment.

2. Applicable employees may be permanently awarded their badge after 5 years of employment if they are in good standing with the Department.
   a. Exceptions for permanently awarding official badges may be allowed at the discretion of the Administrator.

**V. CLOSING**

Provisions of this policy not required by statute will be followed unless the provisions conflict with negotiated labor contracts, which will take precedence to the extent applicable. Questions about this policy should be directed to the position's chain of command or Human Resources.

Ex. D

Visitors showing staff a valid pacemaker identification card will be subject only to a clothed body search and staff will not require them to being exposed to a metal detection device.

**E. Inmate Dress and Searches**

1. Inmates must wear clean, proper fitting, and presentable clothing to visits, including state issue shirt and trousers (no holes in any of the pockets), socks, shoes, and underwear (briefs, and/or thermal underwear). T-shirts and/or thermal tops, if worn must be kept tucked in at all times.
2. Visiting Room Officers must pat, or strip search each inmate just prior to him entering a Visiting Room and must strip search him just before he leaves to return to his housing unit.
3. Inmates will only be allowed to take the following items to the visiting room. These items include:
   a. ID card (this will be kept by visiting staff until the inmate returns to his unit).
   b. One pair of eyeglasses.
   c. Wedding ring.

**F. Conditions of Visiting**



1. Visitors are required to arrange for their transport on and off prison property. Motorized vehicles are the only authorized means of transport. Visitors arriving by any other means will be turned away at Checkpoint.
2. The hours of visitation are as follows:
   a. Visiting is typically allowed Thursday through Sunday. Visitors arriving on any other day

[redacted]

[redacted]

[redacted]

[redacted]

Reginald Gray 3036056 HSU2 (Islam)

- To be able wear the Kufi at all times and anywhere
    - Want to wear the Kufi (head covering) without having to cover it with a ball cap or stocking cap when not in cell or the RAC.
    - It's his religious belief according to the Sunnah which all Muslim are to adhere to.
    - It's his religious right according to RLUIPA
        - There are over 649 other such cases in which the courts ruled that placing a restriction on when and where an inmate wears his head gear is unconstitutional.
    - Denied. MSP 5.6.1 Religious Programming (III)(D)(6)(b) "Inmates who choose to wear their religious skull caps outside their cell or communal services will wear the skull cap

 Ex. E-2

discreetly and fully covered underneath an approved cap. Staff may require an inmate to remove, and may search, the religious skull cap at any time for security reasons."

[redacted]

[redacted]

[redacted]

[redacted]

 Ex. F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | | |
|---|---|---|
| REGINALD COREY GRAY,<br>Plaintiff,<br><br>vs.<br><br>BRIAN GOOTKIN, JIM SALMONSEN,<br>CHRIS LAMB, TERRIE STEFALO,<br>Defendants. | ) | AFFIDAVIT OF REGINALD COREY GRAY |

..............................................................................................

Petitioner, Reginald Corey Gray, is able to testify on facts herein stated, as True. Fed.R.Civ.P.56(e)(1). Plaintiff hereby attest and asserts that the aforementioned Facts stated herein this [S]worn Affidavit, are True:

1. That, his name is reginald Corey Gray; and
2. That, he is the Plaintiff in the case at large ; and
3. That at the time of the violation, he was housed at Montana State Prison, and
4. That, the defendants implemented and imposed MSP Religious Policy 5.6.1(3)(D)(6)(b) "Inmates who choose to wear their religious skull caps outside their cell or communal services will wear the skull cap discreetly and fully covered underneath an approved cap.
5. That, he constantly advised defendants about the Religious Land Use and Institutionalized Persons Act (RLUIPA), and needed to be revised to be in accord with such law. the defendants did nothing and nothing about it.
6. That as result of this policy plaintiff is faced with a substantial burden of wearing his kufi in accord and adherence of his religion or face disciplinary action.
7. I. Reginald Corey Gray, hereby attest that the above, is True.

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March 2026,a copy of the foregoing document was served on the following people by the following means:

__1__ CM/ECF

__2__ CM/ECF

1. Clerk, U.S. District Court
2. Blake R. Koemans
   Attorney for Montana Department of Corrections

Reginald Corey Gray
Plaintiff Pro Se
Montana State Prison#3036056
Deer Lodge,Mt 59722