# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

|  |  |
|---|---|
| REGINALD COREY GRAY,<br><br>Plaintiff,<br><br>vs.<br><br>ERIC STRAUSS[1], JIM SALMONSEN, CHRIS LAMB, and TERRIE STEFALO,<br><br>Defendants. | CV 24-40-H-WWM<br><br><br>ORDER |

Plaintiff Reginald Corey Gray ("Gray"), a state prisoner proceeding pro se and *in forma pauperis*, alleges that Montana State Prison ("MSP") has substantially burdened and continues to burden his right to practice his religious belief under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). 42 U.S.C. § 2000cc–1(a); (Docs. 1–2). Defendants have moved for summary judgment. (Docs. 31–34). The motion is fully briefed. For the reasons provided below, summary judgment is granted.

## I.    BACKGROUND

Gray is incarcerated at MSP in Deer Lodge and is a practicing Muslim. (Doc. 34 at ¶¶ 1–2, 8; Doc. 39 at 4, 12). Gray wears a traditional head-covering

---

[1] Eric Strauss has replaced Brian Gootkin as the Director of the Montana Department of Corrections and, thus, has been substituted here.

called a kufi as a part of his religious practice. (Doc. 34 at ¶ 2; Doc. 39 at 12). The Montana Department of Corrections ("DOC") regulates the religious activities of inmates in Department facilities and prescribes MSP Procedures on religious headgear and other religious items in MSP. (Doc. 34 at ¶¶ 3–4; Doc. 39 at 12). Under Procedure 5.6.1 on religious programming, inmates at MSP may use personal property listed in Procedure 4.1.3 as a part of their religious practice. (Doc. 34-1 at 1, 11 (Procedure 5.6.1(III) defining "Personal Articles"; Procedure 4.1.3 listing items allowed for Islamic inmates)). A kufi falls under "[p]rayer cap" listed in Procedure 4.1.3 as an "article[] allowed for services in the [Religious Activities Center]." (Doc. 34-1 at 11). Accordingly, it is an article subject to Procedure 5.6.1(III)(D). (*See* Doc. 34 at ¶¶ 4–7; Doc. 39 at 12).

Under Procedure 5.6.1(III)(D)(5), "[a]n inmate may only use his personal religious property items in his cell or at communal religious activities" and "may bring their personal religious property for the corresponding religious service they are attending." (Doc. 34-1 at 4). Procedure 5.6.1(III)(D)(6) then states that "[i]nmates may only utilize their religious personal property items in accordance with the religious purpose they were designed." (Doc. 34-1 at 4). Under Procedure 5.6.1(III)(D)(6)(a), religious medallions must be tucked under an inmate's shirt, and inmates may wear the medallion on the outside of their shirt "*only* when in cell or attending a religious service or activity." (Doc. 34-1 at 4

(emphasis added)).  Similarly, and relevant here, Procedure 5.6.1(III)(D)(6)(b) requires that "inmates who choose to wear their religious skull caps outside their cell or communal services will wear the skull cap discreetly and fully covered underneath an approved cap." (Doc. 34-1 at 4).  For "security reasons," Procedure 5.6.1(III)(D)(6)(b) permits staff to "require an inmate to remove, and may search, the religious skull cap at any time." (Doc. 34-1 at 4).  Read together, Procedure 5.6.1(III)(D)(5) supplies the baseline limitation on where personal religious property may be used, while Procedure 5.6.1(III)(D)(6) imposes additional conditions on the manner of that use.

Should an inmate violate subsections (a) or (b) of Procedure 5.6.1(III)(D)(6), Procedure 5.6.1(III)(D)(6)(c) provides that the violation "may result in the confiscation of the item(s) as contraband in accordance with . . . Procedure 3.4.1, Institutional Discipline." (Doc. 34-1 at 4).  Under Procedure 3.4.1, possession of "non-dangerous unauthorized items" constitutes a "minor rule infraction," *see* Procedure 3.4.1 (Attachment A:  Disciplinary Rule Infractions list:  Minor Rule Infractions:  (4319)), and may result in, among other combined sanctions, a "1–2 days cell restriction" on the first offense, *see id.* (Attachment E: Inmate Disciplinary Sanction Grid:  Minor: 1st Offense).

On January 9, 2024, prison staff informed Gray that, if he wears his kufi outside of his cell or religious services, it must be covered by another authorized

3

cap, such as a stocking cap or baseball hat. (Doc. 34 at 5). Gray initiated a grievance on this policy with MSP and sought a religious accommodation to allow him to wear his kufi uncovered anywhere and at any time in the prison. (Doc. 34 at 6). He was advised that the policy would not change, and that he must cover his kufi. *Id.* As a result, he filed this lawsuit alleging violations of the First Amendment and RLUIPA. 42 U.S.C. §§ 2000cc–1, *et seq*. Gray seeks declaratory and injunctive relief against Defendants Eric Strauss ("Strauss"), as the Director of the Montana Department of Corrections, Jim Salmonsen ("Salmonsen"), Chris Lamb ("Lamb"), and Terrie Stefalo ("Stefalo"), (collectively "Defendants"). (Doc. 2 at 2–3, 5). (Brian Gootkin, at the time Gray filed his suit, was the Director of the Montana Department of Corrections. (*Id.* at 2; Doc. 13 at 2). He has been substituted by Strauss.) Salmonsen is the Warden of Montana State Prison. (Doc. 2 at 2; Doc. 13 at 2). Lamb is the Associate Warden of Montana State Prison. (*See* Doc. 2 at 2; Doc. 13 at 3). Stefalo is the Religious Activities Coordinator at Montana State Prison. (*See id.*). Defendants moved to dismiss both claims. Gray's First Amendment claim was dismissed on November 19, 2024. (Doc. 12 at 6–11). Accordingly, Gray's only remaining claim arises under RLUIPA.

4

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).

## III.    ANALYSIS

"There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974). However, "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. Lawful

5

incarceration brings about the necessary withdrawal or limitation of many privileges and rights …". *Bell v. Wolfish*, 441 U.S. 520, 545-46 (1979) (citations and internal quotation marks omitted). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." <u>O'Lone v. Est. of Shabazz</u>, 482 U.S. 342, 348 (1987).

Gray alleges that Defendants "were aware of [his] religious right to be able to practice his religious belief by wearing his [k]ufi at all times, but were deliberately indifferent to [his] religious right." (Doc. 2 at ¶ 27). He further alleges that this claimed deliberate indifference has caused him "to choose between practing [sic] and adherung [sic] to his religious belief or receiving disciplinary action and being placed in locked housing . . .". *Id.* Gray seeks declaratory and injunctive relief relating to his alleged inability to wear his kufi "uncovered, anywhere within the facility" under RLUIPA. (*Id.* ¶¶ 28–29).

"RLUIPA provides that '[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution,' unless the government can demonstrate that the burden 'is in furtherance of a compelling governmental interest' and 'the least restrictive means of furthering that compelling governmental interest.'" *Jones v. Slade*, 23 F.4th 1124, 1139 (9th Cir. 2022) (quoting 42 U.S.C. § 2000cc-1(a)). A plaintiff bears the initial

burden of demonstrating that an institution's policy constitutes (1) a substantial burden on (2) his exercise of religion. 42 U.S.C. § 2000cc-2(b). "Once an inmate makes [this] prima facie showing, the burden shifts to the government to prove that the burden is the least restrictive means of furthering a compelling governmental interest." *Jones*, at 1141 (citing 42 U.S.C. §§ 2000cc-1(a), -2(b)). In ruling on Defendants' motion to dismiss, (Doc. 8), the Court determined that Defendants have a compelling governmental interest to circumscribe the time, place, and manner in which inmates are permitted to display their personal religious property for "maintaining security and order within the facility." (Doc. 12 at 6). Accordingly, the only components of Gray's RLUIPA claim requiring examination are whether (1) Gray's religious exercise is substantially burdened, and (2) whether MSP's Procedures are the least restrictive means of achieving its compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

## A.    *Substantial Burden*

While RLUIPA does not define "substantial burden," the Ninth Circuit construes the term "in accordance with its plain meaning". *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004). Taking the words in turn, "substantial" is defined as "considerable in quantity," *id.* (quoting Merriam–Webster's Collegiate Dictionary 1170 (10th ed. 2002)) (internal quotation marks omitted), and a "burden" is "something that is oppressive," *id.*

7

(quoting Black's Law Dictionary 190 (7th ed. 1999)) (internal quotation marks omitted).  Accordingly, a "substantial burden" on religious exercise "must be 'oppressive' to a 'significantly great extent,'" or in other words, it "must impose a significantly great restriction or onus upon such exercise." *Id.*  A "substantial burden" occurs "where the state . . . denies [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1124–25 (9th Cir. 2013) (citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (alteration in original) (quotation omitted)).

RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A); *Warsoldier*, 418 F.3d at 994.  And "[t]he distinction between questions of centrality and questions of sincerity and burden is admittedly fine." *City of Boerne v. Flores*, 521 U.S. 507, 534 (1997) (internal quotation marks and citation omitted).  With respect to questions of centrality and substantial burden, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks omitted), and the "complex and intractable" problems of prison

8

administration counsel judicial restraint, *see, e.g., Mauro v. Arpaio*, 188 F.3d 1054, 1058 (9th Cir. 1999) (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). This applies with particular force to "substantial burden" determinations in which the inquiry of whether a restriction coerces a plaintiff to modify his religious exercise or violate his religious beliefs is closely intertwined with the theological "centrality" of the asserted "religious exercise." *See Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 716 (1981).

Defendants contend that Procedure 5.6.1(III)(D)(6)(b) does not "substantially burden" Gray's religious exercise of wearing his kufi because MSP permits him to wear a kufi at all times, provided that outside his cell and outside communal services, it is covered by an approved cap. (Doc. 32 at 8–11; Doc. 34 at ¶¶ 14, 18–20). This assertion is based on the ambiguity in Gray's Complaint and briefing over whether his sincere belief is that he must wear the kufi at all times, or that he must wear it uncovered at all times. Gray submitted an exhibit in support of his Statement of Disputed Facts that purportedly establishes the sincerity of his belief that he is required to wear his kufi uncovered at all times. (Doc. 39 at 19 (clearer copy at Doc. 42)). This document only muddies the waters, however, since it states that the Prophet wore "both a turban and a cap underneath it." Accordingly, the issue of exactly what Gray sincerely believes, or what his exact religious practice is, is not entirely resolved. The exact sincere practice, in

9

turn, affects whether Defendants' policy substantially burdens it. If Gray's practice is construed as only wearing the kufi at all times, Defendants prevail on the issue of substantial burden, because Procedure 5.6.1(III)(D)(6)(b) does not forbid possession of a kufi or its continuous wear in some form, with very brief exceptions. On the record properly presented, Gray has not demonstrated that Procedure 5.6.1(III)(D)(6)(b) "substantially burdens" his "religious exercise" defined only as wearing a kufi "at all times." Accordingly, summary judgment is appropriate to that extent.

But Gray also claims his practice is to wear the kufi uncovered at all times. For the purpose of this motion, Defendants do not challenge the sincerity of this belief. (Doc. 32 at 7). Gray submitted a sworn affidavit stating that, as a result of Procedure 5.6.1(III)(D)(6)(b), he faces the burden of either wearing his kufi in accordance with his religion, uncovered at all times, or expecting disciplinary action. (Doc. 39 at 26). If Gray's asserted exercise is wearing his kufi uncovered, then Procedure 5.6.1(III)(D)(6)(b) does not merely regulate the manner of his practice at the margins; it forbids that practice in most areas of MSP. Procedure 5.6.1(III)(D)(6)(b) therefore places precisely the kind of pressure constituting a "substantial burden" under RLUIPA: it requires Gray either to modify conduct he asserts his religion requires or to risk punishment. *See Warsoldier*, 418 F.3d at

995–96; *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015); *Thomas*, 450 U.S. at 717–18.

Accordingly, to the extent Gray's RLUIPA claim is premised on the theory that his religion requires him to wear his kufi uncovered, he has sufficiently alleged and supported a "substantial burden" on his "religious exercise," and Defendants have not carried their burden as movants for summary judgment to demonstrate the absence of a genuine dispute of material fact on that issue. To be sure, the Court does not conclude that Gray has established a "substantial burden" as a matter of law.[2] Gray has not always articulated with precision whether the religious exercise at issue is wearing a kufi at all times or wearing it uncovered. But because the record as it stands demonstrates that the contested policy permits Gray's continuous wear of his kufi, only the "substantial burden" allegedly arising from Gray's inability to wear his kufi uncovered will be considered under the least-restrictive-means analysis.

### B.    *Compelling Governmental Interest and Least Restrictive Means*

For purposes of Defendants' motion, Gray has adduced sufficient evidence to assert that MSP's Procedure 5.6.1(III)(D)(6)(b) "substantially burdens" his

---

[2] In *Muhammad v. Arizona Dep't of Corr.*, No. CV-11-1890-PHX-SMM, 2013 WL 3864253 (D. Ariz. July 25, 2013), for example, the plaintiff, like Gray, determined that his religion required him to wear his kufi at all times, other than when sleeping. But the accommodation he sought from his facility was what the MSP policy requires, covering the kufi with another cap at most times. *Id.*, at *9.

11

asserted religious exercise of wearing his kufi uncovered. In response, Defendants must demonstrate that Procedure 5.6.1(III)(D)(6)(b)'s covering requirement is "in furtherance of a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Because Defendants were already determined to have a compelling government interest, (Doc. 12 at 6), the remaining and more demanding inquiry concerns whether Defendants have shown that MSP "lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by [Gray]." *Holt*, 574 U.S. at 364–65 (internal quotation marks and alterations omitted). "If a less restrictive means is available for [MSP] to achieve its goals, [MSP] must use it." *Id.* at 365 (internal quotation marks and alterations omitted).

To demonstrate the absence of a less restrictive measure, MSP must proffer evidence that it "actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." *Warsoldier*, 418 F.3d at 999. And "where [Gray] challenges [MSP's] justifications, [Defendants] *must* set forth detailed evidence, tailored to the situation before the court, that identifies the failings in the alternatives advanced by [Gray]." *Id.* at 1000 (quoting *May v. Baldwin*, 109 F.3d 557, 563 (9th Cir. 1997)) (internal quotation marks and alterations omitted, emphasis in original); *see also Al Saud v. Days*, 50 F.4th 705, 713 (9th Cir. 2022). In this instance, Gray has not proposed an alternative.

12

Defendants' least-restrictive-means showing rests on the policy history of Procedure 5.6.1(III)(D)(6)(b), and the elucidation of the policy with the affidavit of Defendant Stefalo, who has been the Religious Activities Coordinator at MSP since 2012. (Doc. 34-2). Defendants concede they "have not been able to locate records indicating that when the 2011 amendments were implemented[,] other less restrictive possibilities were considered." (Doc. 32 at 14–15). The relevant provisions were adopted "over a decade ago and, at this point, no record has been located identifying what alternatives were considered." (Doc. 40 at 4).

Prior to 2011, MSP "had a less restrictive procedure that governed religious property." (Doc. 32 at 14; Doc. 34 at ¶¶ 17, 23). Under the earlier rule, Procedure 5.6.1(III)(I)(4), inmates could possess approved religious personal property, and there were no restrictions on when inmates could wear or display those items. (Doc. 34 at ¶ 17; *see* Doc. 34-3 at 7). Defendants assert that, in response to inmates displaying and altering religious personal property to identify themselves as gang members, MSP amended Procedure 5.6.1 in 2011 to include specific rules governing the use and display of religious medallions. (Doc. 32 at 14; Doc. 34 at ¶¶ 15, 21–23; *see* Doc. 34-4 at 4). The 2011 amendment did not address religious headgear. (*See* Doc. 34-4 at 4). In 2014, Procedure 5.6.1 was amended again to add a subsection specifically addressing religious headgear, (Doc. 34 at ¶ 24; Doc. 34-5 at 4), which is the most recent iteration and the policy that Gray

13

challenges. In Defendants' view, this evolution demonstrates MSP's attempt at a less restrictive policy, which it found insufficient and led to adoption of the current rule after being "forced to reject" the earlier regime. (Doc. 32 at 15; Doc. 40 at 4–5).

Whether this showing is sufficient under *Warsoldier* requires a closer look at the facts of that case. In *Warsoldier*, the issue was an institutional ban on long hair. *Warsoldier*, 418 F.3d at 992. There, the Ninth Circuit concluded that the defendant institution had not considered a religious exemption to the grooming policy that would allow individuals with a sincere religious belief to be exempt from the general prohibition. *Id.* The court concluded that there were several alternatives to a complete prohibition on hair longer than three inches that were not considered prior to implementing the policy. The record did not show that the defendants in *Warsoldier* had sufficiently considered these alternatives, and thus, the policy ran afoul of RLUIPA.

It is important to note, however, that RLUIPA does not require Defendants to shoulder a "herculean burden" of refuting every conceivable alternative. *May*, 109 F.3d at 563. The record in this matter more closely resembles *May*. In *May*, defendants addressed the alternatives to the challenged hair-search policy in sufficient detail to obtain summary judgment, and the Ninth Circuit panel affirmed when it could find no facts in the record from which a jury could find that a less

14

restrictive means existed. *May*, 109 F.3d at 564–65. The same conclusion occurs here. MSP's previous policy allowed religious headgear without restriction, which is what Gray advocates here. (Doc. 2 at 5, asking the Court to "command[ ] the defendants to change the MSP procedure 5.6.1(3)(D)(6)(b), and allow for inmates to be able to practice their religious beliefs by wearing their religious head gear/skull caps at all times, uncovered, anywhere within the facility"). And while there is no record of the discussion that occurred when the policy changed in 2014, the policy changed to a more restrictive rule. It is difficult to imagine any middle ground between the previous policy of unfettered use to the current policy of covered but almost constant use. Any sort of third path would run into the issue confronted by the Ninth Circuit in *Al Saud* and *Walker*. In both of those cases, the court concluded that the policy adopted was the least restrictive means, because to adopt a looser policy would drive the prison into a dead end, where it would create constitutional equal protection concerns for other religions, whose visual symbolism is also restricted by these policies. As stated in *Al Saud*, "[t]here is no means of granting that accommodation that would not result in discriminating against others." *Al Saud*, 50 F.4th at 713 (9th Cir. 2022).

This analysis does not place an improper burden on Gray to develop an alternative; it merely accepts that the issue of covered/uncovered is binary. There is no viable alternative that meets the purpose of the policy to limit security issues

15

related to religious symbols, while allowing as much religious freedom as possible. Having moved from a less restrictive to a more restrictive policy over time, Defendants have sufficiently considered less restrictive means to further their compelling governmental interest.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted. Gray has not shown there is a disputed material fact that warrants a trial. Assuming Gray has shown that Defendants' policy substantially burdens his sincerely held religious belief, Defendants have shown their policy is the least restrictive means to further their compelling governmental interest.

Accordingly,

**IT IS HEREBY ORDERED**:

Defendants' motion for summary judgment (Doc. 31) is **GRANTED**. The Clerk of Court is directed to enter judgment pursuant to Fed. R. Civ. P. 54.

The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 11th day of June, 2026.

WILLIAM W. MERCER
UNITED STATES DISTRICT JUDGE

16